448 So.2d 554 (1984)
John A. DIXON, et al., Appellants,
v.
Jacob Lynn FEASTER, et al., Appellees.
No. 83-392.
District Court of Appeal of Florida, Fifth District.
March 29, 1984.
*556 T. Allen Crouch, Gainesville, for appellants.
H. Randolph Klein of Klein & Klein, Ocala, for appellees.
COWART, Judge.
This case involves the right to a way of necessity as that common law concept is recognized in section 704.01(1), Florida Statutes (1981).
When he died in 1943 Jake W. Feaster left children including J. Lynn, James O., Mary Leila, and Lizzie Lois Feaster Dixon, and owned the 173 acres sketched as follows:

By agreement the children divided this property. Lizzie Lois Feaster Dixon received the northeast 40 acres; Mary Leila Feaster, the southeast 40 acres; J. Lynn Feaster, the northwest 40 acres; and James O. Feaster, the southwest 40 acres. J. Lynn and James O. took title to the 13 acre tract jointly.
When Jake W. Feaster, the ancestor, died there was a service road from county road 329 westward to the two back 40 acre tracts, which is shown as Route 1 on the above sketch. In 1946 Lizzie Lois Feaster Dixon and husband acquired the southeast acres previously owned by Mary Leila Feaster. Thereafter, sometime in the early 1950's the Dixons and James O. Feaster relocated the road to the two back 40 acre tracts to the location shown as Route 2 on the above sketch.[1] Mrs. Dixon conveyed some of her 80 acres to her children and their spouses. A few years ago J. Lynn Feaster conveyed 5 acres in his 40 acre tract to his son and daughter-in-law, Jerome W. and Patricia Feaster, who, desiring a shorter and better route to their 5 acres, filed an action against the children of Mrs. Dixon and their spouses to establish an easement of necessity under section *557 704.01(1), Florida Statutes, from the 5 acre tract easterly to County Road 329. The trial judge found that Jerome W. Feaster and wife were entitled to a way of necessity at the location shown as Route 3 on the above sketch and the defendants appeal. We reverse.
Section 704.01(1), Florida Statutes (1981), provides:
(1) IMPLIED GRANT OF WAY OF NECESSITY.  The common law rule of an implied grant of a way of necessity is hereby recognized, specifically adopted, and clarified. Such an implied grant exists where a person has heretofore granted or hereafter grants lands to which there is no accesible right-of-way except over his land, or has heretofore retained or hereafter retains land which is inaccessible except over the land which he conveys. In such instances a right-of-way is presumed to have been granted or reserved. Such an implied grant or easement in lands or estates exists where there is no other reasonable and practicable way of egress, or ingress and same is reasonably necessary for the beneficial use or enjoyment of the part granted or reserved. An implied grant arises only where a unity of title exists from a common source other than the original grant from the state or United States; provided, however, that where there is a common source of title subsequent to the original grant from the state or United States, the right of the dominant tenement shall not be terminated if title of either the dominant or servient tenement has been or should be transferred for nonpayment of taxes either by foreclosure, reversion, or otherwise.
As section 704.01(1), Florida Statutes, makes clear, in order to entitle an owner of a dominant estate to a way of necessity over the servient estate both properties must have at one time been owned by the same party. This requirement is called a "unity of title". The first relevant "unity of title" involved in this case was that held jointly by the heirs of Jake W. Feaster at the time of his death. The Feaster heirs (J. Lynn Feaster and James O. Feaster) who took the two back (west) 40 acre tracts reserved no express access easement over their interest in the front (east) two 40 acre tracts and were conveyed no express access easement by their coparceners. Perhaps J. Lynn and James O. Feaster received the additional 13 acre tract to equalize the difference in value between the front tracts with their value enhanced by ready road access and the value of the back tracts with their access problem. Or perhaps they obtained the 13 acres tract to assure themselves substantial but imperfect access from the county road to the two back 40 acre tracts. In any event, assuming contrary to these possibilities and most favorably to the two back 40 acre tracts, a way of necessity for access to them across the front 80 acres could reasonably be implied by law. However, the implied or presumed right of way for access would be that located at Route 1 because an actual way across the front tracts giving access to the two back tracts existed and was in actual use for that purpose at that location at that time and, therefore, there was no need or reason to imply its location at any other point.
Next, the Dixons and James O. Feaster then agreed to swap the location of the right of way from its location at Route 1 to the location shown as Route 2. Because these persons were all persons then owning the lands to which benefit or detriment resulted from the right-of-way swap, no one else can complain as to their action and those persons who made the swap are not now complaining in any way. Specifically, Lizzie Lois Feaster Dixon is not complaining about the fact that where Route 2 moves from the 13 acres tract to the southwest 40 acres owned by James O. Feaster it cuts a corner around a pond and transgresses a little across some of her property in the southwest corner of the southeast 40 acres.
Although it does not appear to affect or effect a proper result in this case, a second "unity of title" results from the fact that in 1949 J. Lynn Feaster sold his northwest *558 40 acres and his joint interest in the 13 acre tract to his brother James O. Feaster who, in 1962, reconveyed the northwest 40 acres to J. Lynn Feaster. The reconveyance would appear to be adequate to remove any question about the legal basis for implying a way of necessity in favor of the northwest 40 acres down and over Route 2 as it crosses the southwest 40 acres and the 13 acre tract.
A third "unity of title" and way of necessity would appear to result in favor of the 5 acre tract sold by J. Lynn Feaster to appellees Jerome W. Feaster and wife. This would appear to exist over the lands between the 5 acre tract and the north end of Route 2 at the southwest corner of the 35 acres retained by J. Lynn Feaster.
In addition to the requirement of unity of title from a common source, and in order that a grant of a way of necessity be implied by the common law, the common source of title must have caused the dominant estate to have become landlocked. See 2 Thompson on Real Property, § 364 at 405 (rev. ed. 1980). Here the partition by the heirs of Jake W. Feaster in 1945 did not cause appellee Jerome W. Feaster's 5 acre tract, or even the 40 acre tract of which it is a part, to become landlocked because its owners had access to the county road by the use of the existing road at Route 1 and they swapped that right for the right to use Route 2 which continues to date to give access from the two back 40 acre tracts to the county road. Because of the existing actual way of ingress and egress at Route 1 in 1945 there was no basis for implying a way of necessity at any other location. In 1945 the area through which Route 3 passes was heavily wooded and there is no factual basis for any inference that the Feaster heirs in 1945 intended an access easement at that location.
Route 1 (or its agreed substitute, Route 2) is the way of necessity that the law would imply from the history of the title to these tracts of land and none of the owners of the servient estate under the access way along this route have objected to, or threaten to stop, its use by owners of property in the two back 40 acre tracts. Nevertheless, appellee Jerome W. Feaster and wife do not want the benefit of this easement at this route. They claim, and apparently the trial judge agreed, that they have no legal easement over this route "created by prescriptive use" and, therefore, that they have no legal access and, having none, they are entitled under section 704.01(1), Florida Statutes, to have the law imply a way of necessity to them and that the route, the use of which will be most beneficial to their 5 acre tract, and the one which is most "practicable" and which they will most enjoy, is a route across appellants' lands due east from their 5 acres to the county road. The trial judge apparently agreed but located the new easement at Route 3 (which does not connect with the 5 acre tract) because there it is centered over a land line between two parcels owned by appellants.
Appellees Jerome W. Feaster and wife argue that while Route 2 may have been satisfactory for farm use access in 1945 because of its condition, length and location it would now cost much more to fill, stabilize and improve Route 2 than Route 3 and that, therefore, Route 2 is not "practicable" for use for modern car traffic to get to the home they desire to build on their 5 acre tract. Appellees Jerome W. Feaster and wife cite the statutory definition of "practicable" in section 704.03, Florida Statutes, and Walkup v. Becker, 161 So.2d 893 (Fla. 1st DCA 1964), and Redman v. Kidwell, 180 So.2d 682 (Fla. 2d DCA 1965), cert. den., 188 So.2d 806 (Fla. 1966), appeal dismissed, 189 So.2d 631 (Fla. 1966), which they interpret as replacing the common law "strict necessity" rule with a more flexible "reasonable necessity" rule. Nonetheless, both the statute and these cases purport to adopt the common law way of necessity which rests upon the common law concept of an implied grant and that implication is applicable only as to conditions existing at the time of circumstances giving rise to the implication; that is, to the time of the conveyance by the common source of part of a tract that *559 caused the other part to become landlocked.
A way of necessity was implied by the common law based on the reasonable presumption that the original parties intended the grantor to convey to the grantee whatever easement over lands retained by the grantor as was necessary for access for the grantee to use the property conveyed or that the parties intended the grantor to retain whatever easement over lands conveyed as was necessary to retain access for the grantor to continue to use lands retained. Section 704.01(1), Florida Statutes, purports to recognize, adopt and clarify this common law rule of an implied grant of a way of necessity. This common law implied grant of a way of necessity has nothing to do with the acquisition of an easement, such as for a road, by prescriptive use.[2] Furthermore, a statute cannot constitutionally expand or extend the common law concept beyond its original reasonable, rational, logical and probable real life, common sense connection between the bare fact of an owner conveying part of his lands under circumstances leaving the conveyed lands or the retained lands without access and the presumed intent of the parties to that conveyance at that time and place because to do so would be to stretch reality into a mere fiction. This might be convenient to the general public interest and to some private parties because it could be used as a convenient device for private parties to avoid the necessity of paying for their needed rights of way for ingress and egress and for the government to avoid the necessity of exercising the power of eminent domain to provide adequate public access to newly developing lands in accordance with their increased needs for access. However, at the same time, such an interpretation would effectively constitute the granting of a private right of eminent domain authorizing the taking of private property rights without the payment of full and adequate compensation as required by the constitution and the giving of such private property rights to other private parties.[3] No matter how subtle or obtuse the method, this is not permitted under our constitutional form of government. The result of such a doctrine is easy to visualize in this particular case. If the present or future owners of portions of the back 80 acres in this case continue to fail to consider the need for express easements of ingress and egress and continue to subdivide and upgrade the use of the land and are always successful in looking to the courts to provide their current needs under section 704.01(1), Florida Statutes, where will it all end? When J. Lynn Feaster or his successors in title sell the 5 acre tract immediately north of the 5 acres now owned by appellee Jerome W. Feaster and wife, will that 5 acre tract also be entitled to a direct route east to the county road and across appellants' lands? Will each and every other tract or lot into which the back 80 acres may be subdivided also be entitled to its own "practicable" route defined in terms of its then specific and *560 current needs and location across appellants' lands? To the same extent that the rationale and needed factual basis for the common law implication of a grant of a way of necessity is disregarded in favor of a rule based merely upon the reasonable needs of the present property owners, to that same extent private property rights are unlawfully taken from some and given to others. This cannot be constitutionally done.
There is a further problem. The grantor and grantee to the original conveyance dividing a tract with limited access to public roads should be able to readily see that their action is creating an access problem to a parcel severed or retained and the common law implication as to their intent is certainly not unfair as to them. However, if the implied way of necessity is not established physically and visibly on the ground the circumstances would normally not give subsequent good faith purchasers and lenders actual or legally sufficient constructive notice of the implied easement across the servient estate. This is so because neither a careful examination of the recorded chain of title to, nor an accurate survey or personal ground inspection of, the servient tract will necessarily or usually give notice of facts and circumstances that would put a cautious title examiner (or even a normal, reasonable and prudent person) on notice of the potential claim of a way of necessity in favor of some other tract of land. Must the cautious purchaser or lender inquire as to the sufficiency, "practicality" and legality of the present public access to all other tracts that were ever a part of some larger land tract of which the parcel in which he is interested was once a part? Stretching the basis of the common law implied way of necessity to provide for the current and enlarged needs of some present owner of a part of a long ago divided tract of land at the expense of other good faith present owners of other parts of such tract ignores the concept of a purchaser without notice of hidden land claims and the purposes of recording statutes and of legal doctrines relating to actual and constructive notice and constitutes a serious threat to the stability, marketability and insurability of land titles.
The final judgment "awarding" an easement of necessity across appellants' lands at Route 3 is
REVERSED.
DAUKSCH, J., concurs.
ORFINGER, C.J., concurs specially with opinion.
ORFINGER, Chief Judge, concurring specially.
I concur in the result reached by the majority opinion. I write only to say that the opinion appears to be in direct conflict with that of Walkup v. Becker, 161 So.2d 893 (Fla. 1st DCA 1964), and I think we should say so.
NOTES
[1] The parties do not remember the exact year the road was relocated. J. Lynn Feaster conveyed his 40 acre tract and his interest in the 13 acre tract to James O. Feaster in 1949 before reacquiring the 40 acre tract in 1962, and J. Lynn testified that he was not a party to the agreement to relocate the road.
[2] See Crigger v. Florida Power Corp., 436 So.2d 937 (Fla. 5th DCA 1983), for an example and explanation of the consequences of the shift in the theoretical basis for the concept of a prescriptive right of use from the common law presumption of a prior "lost" grant to a theory based on analogy to acquiring title to land by adverse possession. The basis for the common law presumption of a prior "lost" grant, which supported the now outmoded common law concept of prescriptive rights, was very analogous, and in harmony with, the common law presumption of a grant of a way for ingress and egress when necessary for the use of lands granted or retained by a common owner. An implied grant of a way of necessity is, theoretically, necessarily a permissive use and a permissive use is anathema to an adverse use and vice versa. The concept of an implied grant of a way of necessity and the concept of a way acquired by prescriptive use are absolutely mutually repugnant and inconsistent methods at arriving at the same result. One cannot acquire a right of way by both concepts and proof of facts supporting one theory always constitutes proof of facts defeating the other theory. Proof of both constitutes proof of neither.
[3] An awarded way of necessity not only takes the right of exclusive use of the servient owner's property from him but, in order to use or protect the remainder, it often imposes the practical and legal duty of erecting, and forever maintaining, fences. See Ch. 588, Fla. Stat.