549 So.2d 1095 (1989)
George M. HUNTER, Jr., and Wife, Bennie A. Hunter, Appellants/Cross-Appellees,
v.
MARQUARDT, INC., Appellee/Cross-Appellant.
No. 88-2862.
District Court of Appeal of Florida, First District.
September 26, 1989.
Rehearing Denied November 3, 1989.
*1096 J. Patrick Floyd, Port St. Joe, for appellants/cross-appellees.
Cecil G. Costin, Jr., of Costin and Costin, Port St. Joe., for appellee/cross-appellant.
ZEHMER, Judge.
George and Bennie Hunter appeal a final judgment granting Marquardt, Inc., a twelve-foot common law easement of necessity through their property pursuant to section 704.01(1), Florida Statutes (1987).[1] Marquardt, Inc., cross-appeals an order denying its motion to amend the final judgment to identify the exact location of the easement. We reverse the final judgment and need not reach the issue on cross-appeal.
The Hunters owned a tract of land 70 feet wide (the east-west boundaries) and 200 feet deep (the north-south boundaries) between State Road 30 and the Mexico Beach Canal. The Hunters' home and business (fish market and shell business) were located in the structure on this property. A large north-south ditch running from State Road 30 to the canal occupied a substantial portion of the western part of the lot, and the structure occupied all but approximately 12 feet of the remaining width of the lot. Marquardt, Inc., owned the land west of this ditch adjacent to the Hunters' property and operated a marina for both wet and dry storage of boats on this property. The ditch was a part of the canal system and separated the marina from the Hunters' property along the entire common boundary. Each of the wet slips in this original marina was accessible from the Mexico Beach Canal, a public navigable waterway. The only access over land to these slips was by walking from the land onto the docks and out to the slips. No wet slips in this original marina could be accessed by motor vehicle.
On October 14, 1982, the Hunters sold Marquardt, Inc., a narrow strip of land that runs behind the north end of the Hunters' property and along the Mexico Beach Canal. A substantial portion of this land is submerged, and Marquardt, Inc., planned to use this property for expansion of its marina to include additional wet slips. The evidence is undisputed that the property could not be used for any type of residential or occupancy structure.
In 1987, Marquardt, Inc., sued the Hunters to establish, pursuant to section 704.01(1), a common law implied grant of an easement of necessity over the Hunters' property, and demanded an injunction restraining the Hunters from interfering with such easement and an injunction requiring the Hunters to remove any structure impeding such easement. Marquardt, Inc., alleged that, after the purchase of the land from the Hunters, it used as access to its newly acquired land a clay and dolomite road that extended from U.S. 98 to such land; that there was no other access from the nearest public road to the land except over property belonging to a neighbor of the parties; that the Hunters were constructing an addition to the building on their property and such addition impeded *1097 Marquardt, Inc.'s, access to its property; and that, under these circumstances, Marquardt, Inc., was entitled to a common law easement of necessity.
At the conclusion of the non-jury trial of this cause, the court entered a final judgment granting Marquardt, Inc., a 12-foot easement from the northern right-of-way line of State Road 30 through the Hunters' property to the southernmost boundary line of Marquardt, Inc.'s, property. The order does not identify the specific location of the easement, nor does it locate the alleged dolomite road that Marquardt, Inc., claimed existed but that the Hunters and other witnesses testified never existed.
In Tortoise Island Communities, Inc. v. Moorings Association, Inc., 489 So.2d 22 (Fla. 1986), quashing and adopting the reasoning of the dissent requiring absolute necessity [the "only practical ingress and egress"] for an easement in 460 So.2d 961 (Fla. 5th DCA 1984), the supreme court held:
The issue of law is whether an easement by implication from a preexisting use requires an absolute necessity or only a reasonable necessity such as will contribute to the convenient enjoyment of property. The court below held that a reasonable necessity was sufficient. In a well reasoned dissent, Judge Cowart maintained that such easement required an absolute necessity. We agree with Judge Cowart's reasoning and adopt it as our own.
[Emphasis added.] Applying the reasoning of the dissent so adopted by the supreme court, we conclude that Marquardt failed to prove the requisite necessity of the easement for the beneficial use and enjoyment of the purchased land specified in section 704.01(1) as construed in the Tortoise Island case. The record is undisputed that this property was purchased for its access by water, the only use intended for the property was wet storage slips for boats in conjunction with Marquardt, Inc.'s existing marina facilities, and the only beneficial use that could be made of the property was for wet storage slips.[2] The record shows that the slips can be accessed by water through the navigable Mexico Canal or by an extension of the dock from Marquardt, Inc.'s, original marina, and that the Hunters did not object to such a connection. An implied easement of a way of necessity should not be granted where there is other reasonable access to the property that will enable the owner to achieve a beneficial use and enjoyment of the property. Roy v. Euro-Holland Vastgoed, 404 So.2d 410 (Fla. 4th DCA 1981). The term "necessity," as used in the common law doctrine implying ways of necessity, means that no other reasonable mode of accessing the property exists without implying the easement, and the fact that one means of access is more convenient than another does not make the more convenient means a "necessity." Id. at 413. As stated by the supreme court in Tortoise Island Communities, Inc. v. Moorings Association, Inc., 489 So.2d at 22, such an easement requires a showing of "an absolute necessity." Here, wet boat storage is the planned and only realistic use to be made of the subject property and the navigable waterway provides practicable access to the property for that purpose. The fact that an easement across the Hunters' property could also provide Marquardt, Inc., and its patrons with a more convenient means of access by vehicles directly to the subject property does not establish that the easement is an absolute necessity. Access to one's property *1098 does not require in every instance a means of access by motor vehicle irrespective of the use and benefit expected of the property. We hold, therefore, that the trial court erred in granting Marquardt, Inc., an easement of necessity because there is reasonable access to the property from Marquardt, Inc.'s, adjacent dock and marina and from the Mexico Beach Canal that will allow the beneficial use and enjoyment of the parcels acquired from the Hunters.
The judgment is reversed and the cause is remanded for entry of judgment consistent with this opinion.
REVERSED AND REMANDED.
ERVIN and WENTWORTH, JJ., concur.
NOTES
[1] Section 704.01(1), Florida Statutes (1987), states, in pertinent part:

... an implied grant [of way of necessity] exists where a person has heretofore granted or hereafter grants lands to which there is no accessible right-of-way except over his land... . In such instances a right-of-way is presumed to have been granted or reserved. Such an implied grant or easement in lands or estates exists where there is no other reasonable and practicable way of egress, or ingress and same is reasonably necessary for the beneficial use or enjoyment of the part granted or reserved... .
[2] The property acquired by Marquardt, Inc., consisted of two parcels. Parcel 1, lying north of the Hunters' property, was the same width as the Hunters' property but less than 10 feet from the top of the canal bank to the north (east-west) boundary of the Hunters' land. Parcel 2 was located east of parcel 1 and north of the Duren property (the adjacent property lying east of the Hunters'), and had a common boundary (along an east-west line) with the Duren property that was parallel to Mexico Beach Canal for approximately 170 feet. The depth of parcel 2, from the top of the canal bank to the Duren property, varied from approximately 30 feet in a small area to less than 10 feet. A considerable portion of these two parcels was submerged land. (Pl.Ex. 10). The physical size of the property raises considerable questions as to how vehicles could be accommodated at either parcel without stopping and parking on an adjacent landowner's property.