PETERSON, Judge.
The appellants (McCone), who are heirs of Andrew D. McCone, appeal the summary final judgment which quieted John Henry Butts’ title to real property in Putnam County and which established a common law way of necessity. We vacate the judgment.
Andrew D. McCone and Susie McCone, husband and wife and titleholders of Government Lots 24 and 3, conveyed the following parcel of property to L.W. Wilson by warranty deed recorded in 1946 in Official Records Book 167, Page 35:
Begining [sic] at the South West Corner of Lot 24, section six (6) Township Eleven, S.R.23E. Running East on South line of said lot 24, Three Hundred Forty Yards. (340Yds.) Thence North Three Hundred Yards, (300 Yds), Thence West Three Hundred Forty yards (340 *536 Yds.) To west line of said lot 24. Thence South Three Hundred Yards, (300 Yds.) to point of begining [sic], And containing Ten Acres more or less[.]
(A sketch of the described lands which was attached to a McCone amended counterclaim is appended hereto as Exhibit “A.”)
The grantee, Wilson, later subdivided the lands conveyed to him by the McCones. In 1970, Wilson conveyed the following portion of the lands to Butts’ immediate predecessors in title, Herbert G. Searcy and Janet S. Searcy, husband and wife, by warranty deed recorded in Official Records Book 237, Page 277:[1]
Commence at the Southwest corner of Lot 24, Section 6, Township 11 South, Range 23 East; thence run East along the South line of said lot 24 a distance of 996 feet; thence run North 481 feet to a cement monument, being the point of beginning; thence run East 10 feet, more or less, to the East Boundary line of property conveyed by Andrew D. McCone and Susie McCone to L.W. Wilson, as per deed recorded in Deed Book 167, page 35, public records of Putnam County, Florida; thence run North along said East line 415 feet; thence run West a distance of 300 feet into Bream Lake; thence run South 315 feet to North line of property now owned by Henry Searcy and wife, Levere D. Searcy; as per deed recorded in O.R. Book 208, page 410, public records of Putnam County, Florida; thence run East along North line of said Searcy property 290 feet, more or less, to the northeast corner of said Sear-cy property; thence run South, along the East line of said Searcy property 100 feet to the point of beginning.
Just prior to the conveyance by Wilson, Wilson’s son-in-law allegedly set a concrete monument purported to be the “cement monument” in the last described deed and defined as the “point of beginning.” The Searcys in turn conveyed the property to Butts in 1988 by warranty deed, using the same description used in their deed from Wilson. Butts retained a surveyor to prepare a boundary survey, appended hereto as Exhibit “B.” After this litigation arose, Butts had the same surveyor prepare another survey, appended hereto as Exhibit “C”, to depict an existing “dirt drive” and an additional desired common law way of necessity.
Butts moved for summary judgment based upon his surveys, his occupation of the lands depicted on the surveys, and various affidavits including one from his surveyor in which the surveyor stated that, when “there is an inconsistency with distances stated in a deed and actual locations as shown by monuments on the ground which I refer to in the description ... it is reasonable and correct surveying practice for the monuments to control over distance.” We understand the monument to which he refers to be 1119.43 feet from the west boundary of Lot 24. This is a difference of 123.43 feet when compared with the call in the Butts acquisition deed of 996 feet and a difference of 99.43 feet when compared with the original east line of the Wilson acquisition deed that was 1020 feet from the west boundary of Lot 24.
McCone countered, inter alia, with an affidavit from their surveyor indicating that his review of the description set forth in the Butts acquisition deed excluded property owned by McCone and that the land in dispute and occupied by Butts was included in “McCone’s legal description,” which we interpret to mean within the description of the lands retained by Andrew D. McCone when he sold to Wilson.
We hold that the state of the record indicates that summary judgment is premature for the reason that the affidavits of *537 the two surveyors create an issue as to the location of the east boundary line of the land originally conveyed by McCone to Wilson. In fact, Butts’ survey alone creates that issue. The importance of that boundary line is apparent from an examination of the legal description relied upon by Butts to establish his title. While Butts believes his property begins at the monument placed by Wilson’s son-in-law, the next call is to “run east 10 feet, more or less, to the East Boundary line of property conveyed by Andrew D. McCone and Susie McCone to L.W. Wilson_” If Butts’ surveyor has ever established the location of that boundary, it is not reflected by his surveys or his affidavit. He ignores that important line and simply places the east boundary of Butts’ lands 10 feet east of the monument without attempting to locate the east boundary of the property described in the McCone to Wilson deed. The affidavit of McCone’s surveyor places the lands described in the Butts acquisition deed within the lands conveyed by McCone to Wilson and places the lands in dispute within McCone's remaining lands.
The importance of the legal description, notwithstanding that Butts has shown open, continuous, actual possession of the disputed lands, is that he has chosen to establish adverse possession by color of title based upon an instrument of conveyance. Mitchell v. Moore, 152 Fla. 843, 13 So.2d 314 (Fla.1943). The instrument must contain a description of the property legally sufficient to “identify the land with the degree of certainty essential to ascertain the boundaries and identity of the land....” Id., 13 So.2d at 315. “If the description does not identify the land with the degree of certainty essential to ascertain the boundaries and identity of the land, the deed or other instrument lacks one of the first essentials of color of title.” Id. A written instrument with a legally sufficient description of the property is a vital prerequisite to any claim of adverse possession with color of title. Ferrell v. Ashmore, 507 So.2d 691 (Fla. 1st DCA 1987).
While Butts’ surveyor indicates that he was able to locate the lands described in his client’s acquiring deed by following the rule that found monumentation is preferred by surveyors over distances called for in a deed, Mitchell, 13 So.2d at 318, he ignores the portion of the description calling for the location of the east boundary of the description in the McCone to Wilson deed. Nothing stated in his affidavit overcomes the issue created by that omission. Additionally, as indicated by the first footnote of this opinion, from the record before us, one cannot locate the north line of the Henry and Levere- Searcy property.
The trial court also held that Butts had established a common law way of necessity because the land described in the McCone to Wilson deed was landlocked. “A way of necessity was implied by the common law based on the reasonable presumption that the original parties intended the grantor to convey to the grantee whatever easement over lands retained by the grantor as was necessary ... to use the property conveyed....” Dixon v. Feaster, 448 So.2d 554, 559 (Fla. 5th DCA 1984). Section 704.01, Florida Statutes, purports to adopt and clarify that common law rule of an implied way of necessity. The trial court’s finding that an implied way of necessity was established is also premature for the reason that the record, as it existed at the time the motion for summary judgment was heard, failed to establish that the land described in the conveyance from McCone to Wilson was landlocked. We agree with the trial court that the route established in the summary judgment would be appropriate if the Wilson description was a landlocked parcel of land, but nothing placed in the record up to the time of the hearing on the motion for summary judgment indicated that Wilson lacked access along his southern boundary. We note that, subsequent to the hearing on the motion for summary judgment, a survey was filed by McCone showing Lot 3 as an obstacle to access to the Wilson description, but, in view of the late filing of that survey, the absence of authentication of it, and the discrepancies between it and the Butts survey, Butts has not demonstrated *538 that the Wilson property was landlocked as a result of the transfer from McCone to Wilson.
Finally, we believe that the summary final judgment rendered in this case is the realization of a nightmare for a title examiner who hopes to find a marketable title as a result of his search of the public records. That judgment describes the common law right-of-way as:
[A] common law right-of-way in favor of the plaintiffs inaccessible parcel of land described in O.R. Book 520 Page 1995 of the Public Records of Putnam County, Florida, over the defendants’ land, not including the defendant, Nekoosa Packaging Valdosta and Timber Corp., described as that “existing dirt drive” known as the powerline road, and as shown on the survey dated February 6, 1991.
The problems inherent in such a description that make it impossible to locate this right-of-way from the official records alone are as follows:
1. There are multiple defendants in this case, but the particular defendant whose lands are affected by the summary final judgment is not named in it.
2. An additional title search is required to determine the description of the defendant’s lands and the lands of Nekoosa Packaging Valdosta and Timber Corporation, if such a corporation exists.[2]
3. The survey referred to as one dated February 6, 1991, is apparently not part of the official records; it is not an exhibit to the final judgment; and the record does not reflect a survey bearing that date. The closest we can come to such a survey in the record is one that is most difficult to read, does not contain a metes and bounds description of the right-of-way other than to attempt to follow the bearings by the lines depicting the right-of-way, and indicates in a small note only that field work was last accomplished on February 6, 1991.[3]
The judgment describes the land acquired by Butts’ adverse possession:
[T]he lands shown on the survey dated February 16, 1988, including the lands lying west of and adjacent to the fence running north and south as shown on the survey, said fence now being the common boundary between the plaintiff and the defendants’ lands....
The problems created by that description include:
1. Again, the defendant is not identified.
2. The fence line does not follow any of the legal descriptions in the record and cannot be ascertained without use of the survey which is neither attached to the judgment nor recorded in the official records.
3. The monument establishing the point of beginning according to Butts’ surveyor cannot be found without physical examination of the site or use of the survey. The record does not establish that any legal description has ever been assembled to locate the monument with reference to the southwest corner of Lot 24 north of Butts’ lands. While Butts’ acquiring deed describes the monument or point of beginning to be 996 feet east of the southwest corner of Government Lot 24 and then north 481 feet, the survey shows the monument to be 1119.43 feet east of the southwest corner of Lot 24 and then 441.63 feet north. The latter distances shown on the survey can be meaningfully interpreted by a title examiner searching the records while the former or those contained in the deed are meaningless since, by following those calls, one could never locate the monument on the ground.
In Jones v. Orem, 605 So.2d 1017 (Fla. 5th DCA 1992), we remanded the case to the trial court for the purpose of determining an exact legal description of lands that were earlier found by the trial court to constitute a public right-of-way. The written judgment had simply declared that *539 Power Line Road was a public road for its full length without indicating its width or length in metes and bounds, the customary language used by those involved in real property law. We pointed out that the failure to formulate an exact legal description clouded the title to property in the area traversed by the road. We have the same circumstance in the instant case, and, ironically, the lands involved here are in the vicinity of the lands involved in Jones. Therefore, we would urge the trial court to carefully draft the final judgment to be entered after further proceedings in this case. Legal descriptions of lands in dispute should be included and, if appropriate, legible copies of surveys attached so that the final judgment does not create problems rather than solve them.
REVERSED; REMANDED.
COBB and GRIFFIN, JJ., concur.

. The description refers to the north line of property previously conveyed to another couple named Searcy, Henry and Levere Searcy. This deed is not a part of the record, and the property description contained therein is otherwise unavailable to us. The survey prepared by Butts’ surveyor and appended hereto as Exhibit "B” does not locate thereon the Searcys’ north line. In fact, the survey creates some confusion by indicating that the north line was created by a document recorded in Official Records Book 310, Page 559, rather than Official Records Book 208, Page 410. The document referred to in Butts’ survey has not been made a part of the record either.

. It appears that this named defendant was not served with process, and the record does not reflect an appearance by this defendant.

. This is the survey attached hereto as Exhibit “C.”