721 So.2d 1259 (1998)
C.E. DUPONT and Joyce Dupont, his wife, Appellants,
v.
Carl A. WHITESIDE and Leona Whiteside, his wife, Appellees.
No. 98-874
District Court of Appeal of Florida, Fifth District.
December 23, 1998.
*1260 Ronald W. Brown of Dobson and Brown, P.A., St. Augustine, for Appellants.
Lew Merryday, Palatka, for Appellees.
COBB, Judge.
C.E. Dupont and Joyce Dupont, his wife, plaintiffs below, appeal from an adverse final judgment granting an easement of necessity to Carl Whiteside and Leona Whiteside, his wife, over certain lands owned by the Duponts.
In 1980 the Duponts sold off a portion of their property to the Whitesides. The property purchased by the Whitesides, approximately 32 acres, included frontage on the St. Johns River. The Whitesides planned to build their home on the river front portion of the parcel; however, the public road accessing the property (School Street) was on the lower portion of the property away from the river and separated from it by wetlands. The Whitesides built their home in 1981 at a cost of approximately $240,000.00.
Mr. Whiteside testified that when considering the purchase of the property, his wife informed Mr. Dupont that they could not get to the portion of the property where they *1261 planned to situate their home. According to Mr. Whiteside, Mr. Dupont responded that he was putting "a road in right then." Dupont completed the road before the closing on September 24, 1980. This road traverses the Duponts' property, and provides direct access to the river front portion of the property acquired by the Whitesides. The Whitesides used this road to get to and from their home for some 14 years.
In July 1994, Mr. Dupont objected to the Whitesides' continued use of the roadway. Dupont gave the Whitesides 60 days within which to establish alternative access. The deed of conveyance to the Whitesides contains no grant of easement across any of the Duponts' land. The instant lawsuit was filed by the Duponts to enjoin the Whitesides from their continued use of the roadway over the Duponts' land. The Whitesides filed a counterclaim seeking an irrevocable license to use the roadway based on their expenditures in constructing their home, or, in the alternative, a common law or statutory way of necessity.
At trial the testimony centered primarily on two issues: (1) the parties' understanding at the time the Whitesides purchased the property; and (2) the availability of access to the Whiteside's home without traversing the Duponts' property. According to Mr. Dupont, the Whitesides never asked for an easement and he never offered them an easement. According to Dupont, the Whitesides said they were going to get to their home by building their own road. Dupont testified that he gave them temporary permission to use the roadway over the Dupont land until they could get their own roadway built, but they never attempted to build their own access way to the river front. Dupont sold off other river front parcels and included in those conveyances grants of easement over his lands.
As to the second point, the Duponts presented evidence from an engineer, Logan, that the Whitesides could construct a roadway over their land. Logan testified that although part of the Whitesides' land was possibly wetlands and a culvert would be required, a permit for the proposed construction was obtainable from the St. Johns Water Management District. Logan could not say how much such a road would cost to build.
The Whitesides presented testimony from Epsten, an environmental specialist with the St. Johns River Water Management District who handles permitting for the district. Epsten visited the property and concluded that approximately two-thirds of the distance from the Whitesides' river front home to their uplands was flood plain forest and inundated. He determined that a road through the Whitesides' property would have to be built through approximately 700 feet of wetlands and the Whitesides would likely have to execute a conservation easement to the district covering as many as 8 acres of other adjoining wetlands.
Turner, the Whitesides' other witness, testified that he is a surveyor with experience in wetlands determination and road-building through swamps. Turner testified that the cost of construction of a road on the Whitesides' land from their river front home to the uplands would be in the area of $40,000.00 to $50,000.00. Turner added that the most reasonable and practical route to the Whitesides' river front home is the one they have been using across the Duponts' land.
The trial court entered a final judgment finding that the Whitesides "have no `practicable' way of egress or ingress to their property except by way of the constructed roadway across the property of the [Duponts]" and awarded the Whitesides an implied way of necessity easement over the existing roadway through the Duponts' property.
The evidence below was undisputed that the Duponts sold to the Whitesides a parcel of land which is located at the end of a public road. The Whitesides thus do not lack access to their property but they do lack convenient access to the river front portion of it where they built their home.
In Florida the common law rule of an implied grant of way of necessity has been codified at section 704.01, Florida Statutes:
(1) Implied grant of way of necessity.-
The common-law rule of an implied grant of a way of necessity is hereby recognized, specifically adopted, and clarified. Such an implied grant exists where a person has *1262 heretofore granted or hereafter grants lands to which there is no accessible right-of-way except over her or his land, or has heretofore retained of hereafter retains land which is inaccessible except over the land which the person conveys. In such instances a right-of-way is presumed to have been granted or reserved. Such an implied grant or easement in lands or estates exists where there is no other reasonable and practicable way of egress, or ingress and same is reasonably necessary for the beneficial use or enjoyment of the part granted or reserved. An implied grant arises only where a unity of title exists from a common source other than the original grant from the state or United Sates; provided, however, that where there is a common source of title subsequent to the original grant from the state or United States, the right of the dominant tenement shall not be terminated if title of either the dominant or servient tenement has been or should be transferred for nonpayment of taxes either by foreclosure, reversion, or otherwise.
Claimants such as the Whitesides seeking to establish a way of necessity have the burden of proof to establish that they have no practicable route of ingress or egress. Moran v. Brawner, 519 So.2d 1131 (Fla. 5th DCA), rev. denied, 528 So.2d 1182 (Fla.1988). The term "practicable" as used in 704.01(1) is defined to mean "without the use of bridge, ferry, turnpike road, embankment or substantial fill." § 704.03, Fla. Stat. Under section 704.01(1), no easement can be inferred from a conveyance that creates no necessity. Enzor v. Rasberry, 648 So.2d 788 (Fla. 1st DCA 1994); Dixon v. Feaster, 448 So.2d 554 (Fla. 5th DCA 1984). In Dixon, this court explained:
A way of necessity was implied by the common law based on the reasonable presumption that the original parties intended the grantor to convey to the grantee whatever easement over lands retained by the grantor as was necessary for access for the grantee to use the property conveyed or that the parties intended the grantor to retain whatever easement over lands conveyed as was necessary to retain access for the grantor to continue to use lands retained. Section 704.01(1), Florida Statutes, purports to recognize, adopt and clarify this common law rule of an implied grant of a way of necessity.
448 So.2d at 559.
In Tortoise Island Communities, Inc. v. Moorings Association, Inc., 489 So.2d 22 (Fla.1986), the supreme court held that absolute necessity, not merely reasonable necessity, is required for an implied grant of way of necessity. In Hunter v. Marquardt, Inc., 549 So.2d 1095 (Fla. 1st DCA 1989), rev. denied, 560 So.2d 234 (Fla.1990), the First District applied the holding in Tortoise Island in reversing a final judgment and summarized the applicable law as follows:
An implied easement of a way of necessity should not be granted where there is other reasonable access to the property that will enable the owner to achieve a beneficial use and enjoyment of the property. Roy v. Euro-Holland Vastgoed, B.V., 404 So.2d 410 (Fla. 4th DCA 1981). The term "necessity," as used in the common law doctrine implying ways of necessity, means that no other reasonable mode of accessing the property exists without implying the easement, and the fact that one means of access is more convenient than another does not make the more convenient means a "necessity." Id. at 413. As stated by the supreme court in Tortoise Island Communities, Inc. v. Moorings Association, Inc., 489 So.2d at 22, such an easement requires a showing of "an absolute necessity."
549 So.2d at 1095.
Subsequent to Tortoise Island, we again held that a claimant is not entitled to elect as between several adequate means of access, even though one may be more convenient than another. See Moran.
The Whitesides argue that section 704.01(1) should not be construed so as to deny them an easement to the portion of the land that was contemplated by the parties to be used for their home. The Whitesides point out that they were concerned about the lack of access to the river front portion of the property at the time they purchased the property and that Mr. Dupont put in a road *1263 to accommodate them, albeit over his own property. As the Whitesides point out, an easement by way of necessity is founded upon an implied grant which arises from the supposed intention of the parties. See Matthews v. Quarles, 504 So.2d 1246 (Fla. 1st DCA 1986).
However, this presumed intention is not that the parties intended convenient access, only that it is presumed that a party conveying a landlocked parcel intends to convey what is necessary for the beneficial use of said property, i.e., access. In this case, the parcel conveyed to the Whitesides was not landlocked and the common law principle was thus never implicated. Furthermore, the evidence established below that the issue of access to the river front portion of the property was considered by the parties at the time of purchase. Unfortunately for the Whitesides, the access issue was resolved by the parties based upon what appears to have been an oral promise by Dupont to allow access across his land. Such an oral promise cannot form the basis for an enforceable easement because of the Statute of Frauds. See § 725.01, Fla. Stat. (1997).
Due to the trial court's disposition, it did not address the issue of whether the Whitesides enjoyed a license over the roadway crossing the Duponts' land which became irrevocable. In their counterclaim, the Whitesides alleged, inter alia, that they enjoy a continuing oral license to use the access road across the Duponts' property which they have been using since 1980. The Duponts concede that a license temporarily existed but argue it was revocable and was revoked.
An easement and license are fundamentally different in the law. An easement constitutes an interest in land, is subject to the statute of frauds, and runs with the land. Dotson v. Wolfe, 391 So.2d 757 (Fla. 5th DCA 1980). A license, however, confers no interest in the land but merely gives one the authority to do a particular act on another's land; it may be created orally. Lodestar Tower North Palm Beach, Inc. v. Palm Beach Television Broadcasting, Inc., 665 So.2d 368 (Fla. 4th DCA 1996). A license in land is generally revocable at the pleasure of the grantor but an exception to this rule exists when permission is granted to use property for a particular purpose, or in a certain manner, and in the execution of that use the permittee has expended large sums or incurred heavy obligations for its permanent improvement. Dance v. Tatum, 629 So.2d 127 (Fla.1993). Here, evidence was presented that the Whitesides were concerned about access to the river front portion of the property and in reliance on Dupont's assurance that he was putting "a road in right then" closed on the property and proceeded to construct a $240,000 home. This evidence, if believed by the trial court, could support the granting of an irrevocable license. The cause is remanded for retrial on the license issue.
REVERSED AND REMANDED.
GRIFFIN, C.J., concurs.
HARRIS, J., dissents, with opinion.
HARRIS, J., dissenting.
I respectfully dissent.
While I agree with the general statement of law expressed in the majority, I do not agree that access to the bottom portion of the 32 acres purchased by the Whitesides from the DuPonts is either a "reasonable [or] practicable" way of access to the upper portion of the subject property. The majority acknowledges that the term "practicable" would contemplate an implied easement if the upper portion of the 32 acres was separated from the bottom portion by a river requiring a bridge. I submit that with the advent of environmental laws and the creation of regulatory agencies such as the St. Johns River Water Management District, it might be easier to traverse a river by walking across the surface of the water than to obtain a dredge and fill permit to construct a road through some 700 feet of wetlands. Even if the permit is obtainable, the added cost of construction of the roadway because of the environmental problems and the value of the property lost by having to give a conservation easement to the District in mitigation for the wetlands destroyed would render the purported access unreasonable and *1264 impracticable. The access sought (and obtained) below is not a mere convenience. It is, in the words of Tortoise Island Communities, Inc. v. Moorings Association, Inc., 489 So.2d 22 (Fla.1986), truly a "necessity." I would simply affirm the trial court.