732 So.2d 1138 (1999)
W.N. KEENE (a/k/a William Neil Keene), Appellant,
v.
Tommy JACKSON and his wife, Patricia J. Jackson, Appellee.
No. 98-787.
District Court of Appeal of Florida, First District.
March 12, 1999.
Rehearing Denied May 26, 1999.
H. Guy Green of Green Law Offices, Marianna, for Appellant.
Robert D. Heyde, Marianna, for Appellee.
PER CURIAM.
The Jacksons brought an action for declaratory judgment, seeking a determination that they were entitled to a common law way of necessity, or alternatively, a statutory way of necessity, over Keene's *1139 property. In their second amended complaint, they alleged they had purchased Government Lot 4 ("Lot 4") in 1992, and that part of Lot 4 formed a peninsula in Ocheesee Pond and was not accessible from the remainder of Lot 4 except by crossing defendant's lands, primarily Government Lot 3 ("Lot 3"). They further alleged that Lots 3 and 4 had been owned by a common grantor, I.H. King, until 1925, when King conveyed Lot 3 to J. Will Yon, and that there were several subsequent owners until eventually defendant obtained title to Lot 3. Further, I.H. King still owned Lot 4 when he died in 1956, and plaintiffs obtained title to Lot 4 in 1992 from his heir, Jack King. Plaintiffs contended the landlocked portion of Lot 4, know as "Yon's Landing," was of substantial size and value, and that they needed access across defendant's lands to fully enjoy the use of that landlocked portion of Lot 4.
Defendant Keene answered, asserted affirmative defenses, and counter-claimed to quiet title to "Yon's Landing," the portion of Lot 4 to which the Jacksons sought access, either on the theory of adverse possession or the creation of a boundary line by acquiescence. The trial court found by the greater weight of the evidence that the Jacksons were the owners of Lot 4 in its entirety, including Yon's Landing, based on the records of ownership, survey descriptions, and testimony of witness Jack King. Further, the court found the defendant failed to prove he adversely possessed any part of Lot 4 during any period of time, that there was no access to Yon's Landing by public highway or from the Jacksons' other lands except across Keene's property, and that the Jacksons were entitled to a common law way of necessity over Keene's property, Lot 3, for access to Yon's landing, describing a fifteen foot wide easement in the final judgment. We affirm the trial court's ruling in all respects, and discuss only the issue of reasonable necessity in the context of common law way of necessity.
We recognize that "[a]n implied easement of a way of necessity should not be granted where there is other reasonable access to the property that will enable the owner to achieve a beneficial use and enjoyment of the property." See Hunter v. Marquardt, Inc., 549 So.2d 1095, 1097 (Fla. 1st DCA 1989), citing Roy v. Euro-Holland Vastgoed, 404 So.2d 410 (Fla. 4th DCA 1981). A way of necessity requires a showing of absolute necessity, rather than mere convenience. See Hunter at 1097, citing Tortoise Island Communities, Inc. v. Moorings Association, Inc., 489 So.2d 22 (Fla.1986). Among other things, relying on Hunter, Keene argues that the record shows there is reasonable access to Yon's Landing from the larger portion of Lot 4 across a waterway, and therefore there is no absolute necessity to support a common law way of necessity. Based on the record before us, we conclude that the trial court did not err in ruling there was no reasonable access to Yon's Landing.
The trial testimony supports the trial court's ruling. Among other things, Jack King testified that in his experience with the property, a person could walk across to Yon's Landing from the other portion of Lot 4 when the water was down, but otherwise one would have to cross a creek about thirty feet wide and four feet deep. He also said it would only be dry enough to walk once every five or six years. At other times, a person could walk across, but the water would be up to his neck.
We further conclude that Hunter is distinguishable from the present case. In Hunter, the property owner sought to use the property only for wet storage slips for boats. The property was accessible by water. This court concluded that:
wet boat storage is the planned and only realistic use to be made of the subject property and the navigable waterway provides practicable access to the property for that purpose. The fact that an easement across the Hunter's property could also provide Marquardt, Inc. and *1140 its patrons with a more convenient means of access by vehicles directly to the subject property does not establish that the easement is an absolute necessity. Access to one's property does not require in every instance a means of access by motor vehicle irrespective of the use and benefit expected of the property.
In the present case, in contrast, among other things, the Jacksons propose building a residence on Yon's Landing. While the property has not been used for that purpose in the past, there is authority for the proposition that the property owner is not limited to uses that have been made of the property in the past, and that it is not up to the court to determine what particular beneficial use may be made of the property:
A way of necessity is not limited to those purposes connected with the use of the dominant tenement existing at the time the easement was created, but is available for any and all purposes for which the dominant tenement may be adapted. The enjoyment of such a way is said to be limited only by the necessity for its use in connection with all lawful uses of the land to which it is appurtenant. In other words, a way of necessity is held to be coextensive with the reasonable needs present and future, of the dominant estate; it varies with the necessity, insofar as may be consistent with the full reasonable enjoyment of the servient estate.
25 Am.Jur.2d "Easements and Licenses in Real Property" § 92 (1996).
Because the trial court's order is supported in the record, we AFFIRM.
JOANOS and DAVIS, JJ., CONCUR.
KAHN, J., CONCURRING AND DISSENTING WITH OPINION.
KAHN, J., concurring in part and dissenting in part.
I concur with that portion of the panel decision that affirms the trial court's ruling on Keene's counterclaim to quiet title. I dissent, however, from the remainder of the opinion.
Appellant Keene owns Government Lot 3 and appellees, the Jacksons, own Government Lot 4, both in Section 7, Township 3 North, Range 7 West, Jackson County, Florida. These lots were both owned by a common grantor, I.H. King. Lot 3 is immediately north of Lot 4. King conveyed Lot 3 to appellant's predecessor in title in 1925, while retaining title to Lot 4. The disputed land in this property is a peninsula that juts into Ocheesee Pond. Before a 1992 survey commissioned by appellees, the parties assumed that the small peninsula, known as Yon's Landing, was part of Government Lot 3, appellant's property. The survey revealed that Yon's Landing is in fact part of Government Lot 4 but is separated from the rest of Government Lot 4 by Ocheessee Pond.
The trial court, relying upon section 704.01(1), Florida Statutes (1995), granted appellees a common law way of necessity through appellant's property. This common law way of necessity connects Yon's Landing to the remainder of Government Lot 4. According to the documents and surveys in evidence, Yon's Landing comprises a small part of Lot 4. The majority of Lot 4, being across the pond from Yon's Landing, has adequate ingress and egress, and no claim is made to the contrary.
I would reverse the order of the trial court granting the common law way of necessity. As in Hunter v. Marquardt, Inc. 549 So.2d 1095 (Fla. 1st DCA 1989), appellees' property may be accessed by a waterway. "The term `necessity' as used in the common law doctrine implying ways of necessity, means that no other reasonable mode of accessing the property exists without implying the easement, and the fact that one means of access is more convenient than another does not make the more convenient means a `necessity.'" Hunter, 549 So.2d at 1097; see also Dupont v. Whiteside, 721 So.2d 1259, 1262 *1141 (Fla. 5th DCA 1998); Roy v. Euro-Holland Vastgoed, B.V., 404 So.2d 410, 413 (Fla. 4th DCA 1981). This court noted in Hunter that the Florida Supreme Court requires a showing of "absolute necessity" in order to support the easement. See 549 So.2d at 1097; see also Tortoise Island Communities, Inc. v. Moorings Ass'n, 489 So.2d 22 (Fla.1986).
Moreover, the record does not demonstrate that appellees have been deprived of "beneficial use and enjoyment" of their lot. Such deprivation is the statutory threshold for an implied grant under the statute. "An implied easement of a way of necessity should not be granted where there is other reasonable access to the property that will enable the owner to achieve a beneficial use and enjoyment of the property." Hunter, 549 So.2d at 1097. Use of Yon's Landing for a residential building site is clearly not the only reasonable use of Lot 4 because, although both Lot 3 and Lot 4 have been occupied and used for many decades, no one has ever built a house at Yon's Landing. As made plain by the facts, when the Jacksons purchased Government Lot 4, they had no idea that they were obtaining title to the peninsula across the lake from the major part of their property. It seems quite difficult to argue that the Jacksons have now lost all beneficial use of their property when the portion that they want to use for a home is land that they did not even initially realize they had bought.
This already difficult argument is made even more burdensome by the fact that the common grantor did not, in a literal sense, convey landlocked property to the Jacksons. As far as the Jacksons knew, they had full ingress and egress to their property until they obtained the 1992 survey. "[A]n easement by way of necessity is founded upon an implied grant which arises from the supposed intention of the parties." Dupont, 721 So.2d at 1263. Here, the common grantor of Lots 3 and 4 could not have implied an easement to Lot 4 over the lands of Lot 3, nor could the Jacksons have intended to receive such.
For these reasons, I would reverse the final judgment.