DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**WAYNE GOLDMAN, MARIANNE GOLDMAN** and **SEAN ACOSTA,**
Appellants,

v.

**STEPHEN LUSTIG,**
Appellee.

No. 4D16-1933

[January 24, 2018]

Appeal and cross-appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; William W. Haury, Jr., Judge; L.T. Case No. 07-019309.

Matthew P. Leto of Hall, Lamb, Hall & Leto, P.A., Miami, for appellants.

Andrew J. Baumann and Telsula C. Morgan of Lewis, Longman & Walker, P.A., West Palm Beach, for appellee.

FORST, J.

In a case of "what's up, dock?," both Appellants Marianne Goldman, Wayne Goldman, and Sean Acosta ("Unit Owners")[1] and Appellee/Cross-appellant Stephen Lustig seek a declaration of their rights to a dock located behind Lustig's property. As set forth below, we find that the trial court should have determined the parties' rights and, upon adjudication of those rights, should have found that Unit Owners were entitled to use a portion of the dock, but were not entitled to access that dock by way of an easement by necessity. We reverse and remand for the trial court to amend its final judgment consistent with this opinion.

**Background**

---

[1] Appellants have since sold their units. The new unit owners are pursuing this action on their behalf. *See* Fla. R. Civ. P. 1.260(c); *Levine v. Gonzalez*, 901 So. 2d 969, 972-73 (Fla. 4th DCA 2005) (discussing the Rule which allows for an action to be continued in the name of the original plaintiff after a transfer of interest without requiring substitution).

This case involves a multi-year dispute over the right to use and access a wooden dock located behind Lustig's waterfront property. In 2007, Unit Owners filed a complaint seeking a declaration of their right to use a portion of that dock, as well as a permanent injunction to prevent Lustig from prohibiting their continued use of the dock. Unit Owners and Lustig lived in a community called 900 Hillsboro Mile, located in Broward County. Blue Paper, Inc. originally developed the community. It is comprised of four separate townhouse units, common areas, and a dock located behind the first unit. The Declaration of Covenants and Restrictions ("Declaration") for 900 Hillsboro Mile established a homeowner's association ("Association"). In their complaint, Unit Owners explained that the Association and Lustig entered into a quitclaim assignment ("Assignment") in which Lustig expressly severed his riparian rights to a portion of the dock.

Lustig answered and filed his counterclaim. He also sought a declaratory judgment that would detail his rights to the dock behind his unit, and requested a permanent injunction to enjoin Unit Owners from using any portion of the dock as well as accessing it from his property.

After years of litigation, the parties attended a bench trial in 2014. Lustig argued that he was entitled to exclusive possession and control of the dock by way of his special warranty deed. He admitted it was true that plans for 900 Hillsboro Mile originally demonstrated that there would be two different access piers connecting to one horizontal strip of the dock, such that both Lustig and Unit Owners would use the dock. However, he explained that those plans since changed. He then addressed the Assignment, and argued it was invalid because the Association did not have the authority under the Declaration to assign any dockage rights.

In rebuttal, Unit Owners pointed to the Assignment, where "Mr. Lustig . . . recognized [that] his right to use the dock consisted only [of] 44 feet of dock located in the outside northwest corner of the dock, as described in the attached drawing on the dock." Unit Owners then explained that the original license for the dock, issued by the Broward County Department of Planning and Urban Protection, stated the dock was "for a multi-family unit, or units in question."

Lustig then testified. During direct examination, he added that he should have exclusive possession and control of the dock because, years earlier, the Florida Department of Environmental Protection ("DEP") declined to grant a request for a license that would allow the Association and Unit Owners to construct a marginal dock in addition to the already

2

existing dock. Lustig noted how DEP "specifically said that they [the Association] need my consent to build the dock." However, later during cross-examination, he stated that "I'm contending that I own the vertical piece, and the horizontal piece to a certain point." He further agreed with Unit Owners' counsel that Unit Owners "have the rest of the dock," but that "they just can't get to it." He explained he would have no problem with Unit Owners having a portion of the dock, as long as they built their own pier to access that dock: "They can [use their portion of the dock] if they build a pier, and I have no objection to that . . . . They can get to what they own on their own manner."

After trial, the trial court entered its written final judgment, dismissing both Unit Owners' complaint and Lustig's counterclaim, and concluding that "no party prevailed." Both parties appeal that final judgment.

## Analysis

### A. Dockage Rights

We generally review an order dismissing a declaratory action for an abuse of discretion. *Acad. Express, LLC v. Broward Cty.*, 53 So. 3d 1188, 1190 (Fla. 4th DCA 2011). "However, to the extent that the dismissal is based upon a legal determination, our review is de novo." *Bloch v. Del Rey*, 208 So. 3d 189, 192 (Fla. 3d DCA 2016).

The parties agree that the trial court erred by failing to determine the parties' rights to the dock, and that this Court can adjudicate the matter on appeal. The Unit Owners maintain that Lustig clearly and unambiguously severed his riparian rights and agreed not to impede or interfere with the riparian rights of the Unit Owners when he executed the Assignment, as the Assignment contemplated that Lustig could only use a forty-four-foot strip of that dock, and that the Unit Owners had a right to use the remaining portion. Lustig argues that only he has any rights to the dock and the Assignment was invalid as a matter of law because the Association could not assign any rights. Moreover, Lustig contends that the DEP already decided the instant matter on appeal when it denied Blue Paper, Inc.'s original application for a permit to construct a marginal dock due to there being insufficient evidence of upland interest.

We find that Unit Owners are entitled to use a portion of the dock. As an initial matter, and as both parties assert, the trial court's final judgment is inadequate. The trial court, pursuant to Florida's Declaratory Judgment Act, should have provided both parties with a declaration of their rights to the dock as they had requested. *See* § 86.011, Fla. Stat. (2017); *see also*

*Sears, Roebuck & Co. v. Forbes/Cohen Fla. Props., L.P.*, 223 So. 3d 292, 298 (Fla. 4th DCA 2017) ("[C]onclusory final judgments on declaratory judgment claims, which are devoid of factual findings or conclusions of law, are inadequate.").

Still, we can adjudicate the instant dispute given that it is entirely legal in nature. *See Sears*, 223 So. 3d at 298. Here, Unit Owners have a right to use a certain portion of the dock given that they and Lustig executed the Assignment. *See Haynes v. Carbonell*, 532 So. 2d 746, 748 (Fla. 3d DCA 1988) ("[R]iparian interests may be severed only by an 'express bilateral agreement to do so.'" (quoting *Belvedere Dev. Corp. v. Dep't of Transp.*, 476 So. 2d 649, 653 (Fla. 1985))). First, the title of the Assignment is telling: "Nonrecourse Quitclaim *Assignment of Dockage Rights.*" Next, in the text of the Assignment itself, Lustig agreed to the fact that the dock was "constructed for the benefit of the owners of townhouses at the Association for the dockage of vessels adjacent thereto," and then agreed that he was acquiring "the right to the use of a portion of the Dock described as the Forty Four (44) feet of dock located at the outside northwest corner of the Dock."[2] He also "agree[d] not to impede or interfere with any other party's rights at the dock." Three pages later, he signed the plat map which designated the portion of the dock that he could only use. In light of the title of the Assignment, as well as its specific provisions, Lustig unequivocally severed his riparian rights.

Lustig makes several arguments on appeal for why the Assignment was invalid. Regardless of their merit, we find them all waived since he conceded at trial that Unit Owners had a right to use a portion of the dock. He stated during cross-examination that "I'm contending that I own the vertical piece, and the horizontal piece to a certain point." Then, he agreed that Unit Owners "have the rest of the dock," but that "they just can't get to it." He further explained he would have no problem with Unit Owners using a portion of the dock, as long as they built their own access pier to it. His main concern was evident: he no longer wanted to see his neighbors accessing the dock by encroaching on his land and pier.

B. *Easement by Necessity*

---

[2] Although these two stipulations were included as "whereas clauses," which are usually prefatory and non-binding in nature, *see Orlando Lake Forest Joint Venture v. Lake Forest Master Cmty.*, 105 So. 3d 646, 648 (Fla. 5th DCA 2013), these stipulations expressly became binding through paragraph one of the Assignment, which stated: "The recitals set forth above are true and correct and are incorporated herein by reference."

4

Lustig's main concern brings us to our next issue on appeal: whether Unit Owners, who have a right to use the dock, have the right to access that dock by way of an easement by necessity. We review this legal question de novo, *see St. Vincent's Med. Ctr., Inc. v. Memorial Healthcare Grp., Inc.*, 967 So. 2d 794, 799 (Fla. 2007), and find that they do not have the right to access Lustig's pier by way of such an easement.

A party who seeks "to establish a way of necessity, whether in regard to an implied grant or statutory way, has the burden of proof to establish that he or she has no practicable route of ingress or egress." *Moran v. Brawner*, 519 So. 2d 1131, 1133 (Fla. 5th DCA 1988). Section 704.01(1), Florida Statutes (2017), codifies the requirements for obtaining an implied easement by necessity:

> Such an implied grant exists where a person has heretofore granted or hereafter grants lands to which there is no accessible right-of-way except over her or his land, or has heretofore retained or hereafter retains land which is inaccessible except over the land which the person conveys. In such instances a right-of-way is presumed to have been granted or reserved. Such an implied grant or easement in lands or estates exists where there is no other reasonable and practicable way of egress, or ingress and same is reasonably necessary for the beneficial use or enjoyment of the part granted or reserved.

§ 704.01(1), Fla. Stat. (2017). In the instant case, there is no dispute that the only way for Unit Owners to currently access the dock by land is by first crossing into Lustig's backyard and then walking on his pier.

However, just because Unit Owners cannot currently access the dock by land does not mean that they have a need for an easement. As stated by the Florida Supreme Court in *Tortoise Island Communities, Inc. v. Moorings Association, Inc.*, 489 So. 2d 22 (Fla. 1986), an easement by necessity requires a showing of an "*absolute necessity.*" *Id.* at 22 (emphasis added). Given that Unit Owners live on waterfront property, they can reach the dock by constructing their own access pier, which would be a "reasonable and practicable way of egress, or ingress." § 704.01(1), Fla. Stat. Or, they can find an alternate means of accessing the dock, such as using a canoe or kayak departing from their own property.

Our decision is guided in part by *Hunter v. Marquardt, Inc.*, 549 So. 2d 1095 (Fla. 1st DCA 1989). There, the First District Court of Appeal overturned the granting of an easement by necessity because the appellee

could access certain wet storage slips, located beyond appellant's dock, "by water through the navigable Mexico Canal or by an extension of the dock from [the appellee's] original marina." *Id.* at 1097. The court held that "the navigable waterway provides practicable access to the property for that purpose." *Id.* Here, the Intracoastal Waterway behind the parties' units also provides practicable access to the dock. Although we are sympathetic of the inconvenience and cost to Unit Owners of now having to build their own access pier, these factors do not outright determine whether an easement is absolutely necessary. *See Roy v. Euro-Holland Vastgoed, B.V.*, 404 So. 2d 410, 413 (Fla. 4th DCA 1981) ("The fact that one means of access may be more convenient than another does not suffice [for purposes of obtaining an easement by necessity].").

## Conclusion

We reverse and remand for the trial court to amend its final judgment and find that Unit Owners are entitled to use a portion of the dock, but are not entitled to an easement by necessity in order to access it. Lustig expressly severed some of his riparian rights to the dock in the Assignment, and conceded as much at trial. However, Unit Owners do not merit an easement by necessity because they have failed to demonstrate an absolute need for such an easement.

*Reversed and remanded.*

TAYLOR and KLINGENSMITH, JJ., concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

6