648 So.2d 788 (1994)
Rhett E. ENZOR, Jr., Appellant,
v.
William Clinton RASBERRY, Jr., Thomas B. Ray, Timothy E. Ray, and W.C. Rasberry, Appellees.
No. 93-850.
District Court of Appeal of Florida, First District.
December 23, 1994.
*789 Donald H. Partington of Clark, Partington, Hart, Larry, Bond, Stackhouse & Stone, Pensacola, for appellant.
Walter J. Smith, Smith, Grimsley, Remington, Bauman, Pinkerton, Petermann & Saxer, Fort Walton Beach, for appellees.
BENTON, Judge.
We review a final judgment quieting title to a road traversing property owned by plaintiffs below, William C. Rasberry, Jr., Thomas B. Ray, Timothy E. Ray, and W.C. Rasberry, who filed suit to extinguish Rhett E. Enzor, Jr.'s claim to a common law way of necessity across their land. We conclude that the trial court erred in finding that Mr. Enzor had reasonable and practicable alternative means of egress from and ingress to his property. We therefore reverse and remand.
In explicating the facts of the case, words alone fail us. We invite the reader's attention to the diagram attached as an appendix to the opinion, a composite of Exhibits 1 and 2 to the final judgment. Able counsel produced a comprehensive stipulation, part of which follows:
1. The Plaintiff's and Defendant's property [except Parcel A] at one time were owned by the same common owners, W.C. Rasberry and Helen Rasberry.
2. Defendant, RHETT E. ENZOR, JR., acquired his property from the estate of his father, Dr. Rhett Enzor, who being landlocked, had access to a public road (Antioch Road) across a portion of Plaintiffs' property... .
3. In approximately 1967, Dr. Rhett Enzor's access to public road (Antioch Road) across a portion of Plaintiffs' property would have been cut off by the construction of Interstate 10.
4. That the State of Florida condemned a portion of Plaintiffs' property for a "service road" which service road traversed from Antioch Road to a dirt road on the Plaintiff Rasberry's property where it ended in the vicinity of the pre-existing dirt trail that Dr. Rhett Enzor had traversed for access to his property... .

*790 5. After the condemnation proceeding and during and after construction of Interstate Highway I-10, Dr. Rhett Enzor had access to his property by way of the service road to its termination point and thereafter on the dirt trail to Defendant's property.
... .
9. That the Defendant contends that a residence located on his property is his homestead.
10. In September, 1978, the State Road Department conveyed to Defendant by quit claim deed the property described as a borrow pit, which had been previously used by the State Road Department for construction of Interstate 10.
At one time Mr. and Mrs. W.C. Rasberry owned parcels B, C, D, and the parcels labelled "Purchased From Rasberry (1964)" and "Purchased From Rasberry (1968)." The Rasberrys never owned the Gordon/Enzor property, a hunting camp (parcel A). Dr. Rhett Enzor, appellant's predecessor in title, purchased parcel A in 1963 from strangers to the present litigation.

1964 Purchase Of Already Landlocked Parcel
Mr. and Mrs. W.C. Rasberry allowed Dr. Enzor access to parcel A from Antioch Road by a dirt road (old trail road), which crossed parcels B and D. On August 15, 1964, Mr. and Mrs. W.C. Rasberry conveyed to the same Dr. Rhett Enzor the parcel described on the diagram as "Purchased From Rasberry (1964)." Landlocked, this parcel also had access to Antioch Road, the nearest public road, by way of old trail road, which crossed parcels A, B, and D. The segment of old trail road traversing parcel A (owned by Dr. Enzor before he purchased any of the Rasberry property) connected the parcel purchased from Rasberry in 1964 to parcels B and D, which remained the property of Mr. and Mrs. W.C. Rasberry.
Although parcel B and the parcel purchased from Rasberry in 1964 have a common corner, the conveyance of the parcel "Purchased From Rasberry (1964)" did not impair access from the parcel "Purchased From Rasberry (1964)" to Antioch Road, because the shared corner, a single mathematical point, did not allow access between parcel B and the parcel "Purchased From Rasberry (1964)" before (or after) the conveyance. It was not the 1964 conveyance that "created the situation causing the dominant tenement to become landlocked." Matthews v. Quarles, 504 So.2d 1246, 1247 (Fla. 1st DCA 1986). After the conveyance as before, access from the parcel purchased from Rasberry in 1964 to the nearest public road was over old trail road across parcel A, then across parcels B and D.[1]

New Highway Alters Access Route
In 1967, the State of Florida condemned portions of parcel D[2] for construction both of Interstate Highway 10 and of a parallel "service road" to the south, so marked on the appended diagram. These acquisitions and ensuing construction severed old trail road as it crossed parcel D, cutting off all of the parcel "Purchased From Rasberry (1964)," all of parcels A and B, and some of parcel D from Antioch Road.[3] When built, however, *791 the service road, which started at Antioch Road and joined old trail road south of the interstate highway, provided alternative access. During and after construction of the interstate highway, Dr. Enzor could reach his property from Antioch Road by taking the service road to old trail road and proceeding from the junction as before.

Conveyance Creates Servient Tenement
In 1977, Mr. and Mrs. W.C. Rasberry conveyed parcels B (less the borrow pit) and C to the immediate predecessor in title of Adams & Sons Timber Service Company (Adams). (Dr. Enzor acquired the borrow pit from the state in 1978.) The final judgment reports:
In 1977, Rasberry conveyed Parcels B and C (conti[g]uous parcels in Section 35) to the predecessor in title to Adams & Sons Timber Service Company... . On January 10, 1978, Adams & Sons conveyed Parcel B to Rhett Enzor. Dr. Enzor then accessed his hunting camp from Antioch Road, south of the Interstate, going west on the service road until it intersected the trail road as it continued on to the south, southwest to his Parcel B, then across his land in Section 34 and finally into his hunting camp in Section 3.
This means of access was the same as Dr. Enzor had used since the construction of the service road a decade earlier and, from the junction of old trail road and the service road to the parcel he purchased from Rasberry in 1964, the same as he had used since 1964.
The Rasberrys' 1977 conveyance to Adams' predecessor in title caused parcel B's initial "landlocking." Although parcel C was conveyed along with parcel B, neither was accessible by public road or right-of-way, while parcel D remained accessible by Antioch Road. Section 704.01(1), Florida Statutes (1993), provides:
The common law rule of an implied grant of a way of necessity is hereby recognized, specifically adopted and clarified. Such an implied grant exists where a person has heretofore granted or hereafter grants lands to which there is no accessible right-of-way except over his land, or has heretofore retained or hereafter retains land which is inaccessible except over the land which he conveys. In such instances a right-of-way is presumed to have been granted or reserved. Such an implied grant or easement in lands or estates exists where there is no other reasonable and practicable way of egress or ingress and same is reasonably necessary for the beneficial use or enjoyment of the part granted or reserved. An implied grant arises only where a unity of title exists from a common source other than the original grant from the state or United States.
(Emphasis supplied.) As codified by this statute, the "common-law rule of an implied grant of a way of necessity" requires the proponent of such a way of necessity to establish three elements:
In order for the owner of a dominant tenement to be entitled to a way of necessity over the servient tenement, (1) both properties must at one time have been owned by the same party, (2) the common source of title must have created the situation causing the dominant tenement to become landlocked, and (3) at the time the common source of title created the problem the servient tenement must have had access to a public road. Roy v. Euro-Holland Vastgoed, B.V., 404 So.2d 410 (Fla. 4th DCA 1981); Hanna v. Means, 319 So.2d 61 (Fla. 2nd DCA 1975).
Quarles, 504 So.2d at 1247. Both parcels "B-C" and D were owned by Mr. and Mrs. W.C. Rasberry when they conveyed parcel "B-C" to Adams' predecessor in title, causing parcel "B-C" to become landlocked at a *792 time[4] when the servient tenement (parcel D) had access to a public road.
The rule in Florida is clear that a "way of necessity over remaining lands of the grantor, created by implied grant upon the severance of land, ... passes by each conveyance to subsequent grantees thereof." Roy v. Euro-Holland Vastgoed, B.V., 404 So.2d 410, 412 (Fla. 4th DCA 1981), quoting 25 Am.Jur.2d Easements and Licenses § 95 (1966). Adams' acquisition of parcel "B-C" included the appurtenant common law way of necessity over parcel D; and Dr. Enzor's acquisition, albeit only of parcel B, likewise included the appurtenant common law way of necessity over parcel D.

Service Road Vacated
The service road was a public road at the time of the Rasberrys' conveyance to Adams' predecessor in title. This changed, after Adams conveyed to Dr. Enzor: The State transferred jurisdiction over the road to Okaloosa County, which vacated it, closed the road to the public, and gave the Rasberrys a quitclaim deed.
Upon the County vacating the service road in 1979, the Enzors' access through the Rasberry tract was with the express permission of Mr. Rasberry, who also consented to the Enzors installing a gate at Antioch Road on the Rasberry parcel.
(Final Judgment at 2). We do not believe these turns of events[5] evince any intention on Dr. Enzor's part to abandon his right to a common law way of necessity over parcel D, the easement he acquired when he purchased parcel B. Cf. Wiggins v. Lykes Bros., Inc., 97 So.2d 273 (Fla. 1957). Parcel D had access to a public road before the service road was opened and after it was closed. No change in the service road's ownership altered the necessity which gave rise to the common law easement.

No Reasonable And Practicable Alternative
The trial court's decision rests on the premise that "the right to a way of necessity expires when the claimant acquires another practicable outlet to a highway." Fox Investments v. Thomas, 431 So.2d 1021, 1022 (Fla. 2d DCA 1983); see Hunter v. Marquardt, Inc., 549 So.2d 1095 (Fla. 1st DCA 1989), review denied 560 So.2d 234 (1990); Roy, 404 So.2d at 412. The findings in the final judgment discuss an alternative means of access to parcel B:
6. There now exists across Parcels B and C a road, shown on Exhibit 1 as Point Center Easement. This road is used by large, commercial vehicles to access the demolition and construction disposal pit located in the area of Parcel B and labeled "Borrow Pit." This road provides a reasonable and practicable way of egress and ingress to Parcels B and A.
7. Enzor acquired by implication a common-law easement from his inaccessible Parcel B over the Adams/grantor's property, Parcel C, to Garrett Pit Road.
While we have no quarrel with the proposition that easements arising from rights to common-law ways of necessity "expire as soon as the necessity disappears," Fox Investments v. Thomas, 431 So.2d at 1022,[6] we *793 do not agree that the necessity has disappeared in this case.[7]
The final judgment discusses the effect of the 1978 Adams conveyance on access to what became Garrett Pit Road, a dirt road which runs north-south on Rasberry property[8] along the eastern boundaries of parcels C and D and intersects Antioch Road east of the service road.
The Adams conveyance to Enzor of Parcel B was of a landlocked parcel; Adams retained lands (Parcel C) contiguous to Parcel B, that ultimately had access to a public or private road, to wit, Garrett Pit Road. Adams then on August 17, 1979, conveyed the access parcel, Parcel C, to Hilburn and Hilton. Adams is the common source of title that caused Parcel B, the dominant estate of Enzor, to become landlocked; Adams should therefore be the source over which the common-law way of necessity is granted for the benefit of Parcel B.
(Final Judgment at 1-2.) As the word "ultimately" suggests, parcel B did not have access to Antioch Road over parcel C at the time Adams sold to Enzor. At common law, a right to a way of necessity arises, if at all, at the moment of partition. Not only had Point Center Road, the private road which "ultimately" connected parcel B to Garrett Pit Road, not been built, the record does not establish that Garrett Pit Road itself, then unquestionably on private property, was passable at that time.
It is true that Mr. Enzor has made use of a road later built across parcel C. The parties stipulated:
11. That on or about March 17, 1989, Defendant leased a portion of his property, including the area of the borrow pit, to Point Center, Inc., a Florida corporation, of which at that time he was a one-third (1/3) owner of the corporate stock in Point Center, Inc... .
12. On April 28, 1989, Howard E. Hilburn and Doyle E. Hilton executed an easement instrument to Point Center, Inc., the terms and conditions are set forth therein. The parties do not agree to the legal import or effect of this instrument on this lawsuit. The *794 fact of the instrument, what it says and its recordation are admitted... .
13. Prior to the filing of this action, Defendant, Rhett Enzor, Jr., conveyed his stock in Point Center, Inc. to Jeff N. Adams, one of the other principals in the corporation.
14. The dirt road which is on the Hilburn/Hilton easement is used by trucks to enter the Point Center, Inc.'s landfill. It is not maintained by the County.
15. That in March of 1990, Hilburn and Hilton granted a 33 foot easement to Okaloosa County for the purpose of installing and maintaining underground utilities which ran from Garrett Road to the Defendant's property, which easement is located in the vicinity of the previously granted easement for a roadway from Hilburn and Hilton to Point Center, Inc. That the Defendant, Rhett Enzor, Jr., granted to Okaloosa County an easement for installing and maintaining underground utilities on his property for a distance of 825 feet which easement was located on the South 33 feet of the Point Center road easement... . Okaloosa County installed on the easement, a water line from Garrett Road to the Defendant, Rhett Enzor, Jr.'s property, which serves Point Center. The parties do not agree as to the legal effect or import of these instruments insofar as [how] they [a]ffect this litigation is concerned, but do agree to the execution and recording and authenticity of the instruments.
16. Subject to the terms and conditions set forth in it, on August 5, 1991, Hilton and Hilburn executed and signed a deed to a 66 foot roadway to Okaloosa County, Florida, which is recorded in the Public Records... . This roadway lies on the previously granted easement from Hilburn and Hilton granted to Point Center for a road and to Okaloosa County for a utility easement. The parties do not agree as to the legal effect or import of this instrument insofar as it [a]ffects this litigation, but do agree to the execution and recording and authenticity of the instrument.
In the circumstances, the roadway across parcel C (in conjunction with Garrett Pit Road) did not provide Enzor reasonable and practicable access from Antioch Road to parcel B.
First, Dr. Enzor's purchase of parcel B gave rise to no easement over parcel C by operation of law.[9] No easement should be inferred from a conveyance that creates no necessity. Dixon v. Feaster, 448 So.2d 554 (Fla. 5th DCA 1984). When Adams conveyed parcel B to Dr. Enzor, it did not "convey[] a parcel which [wa]s inaccessible except over [Adams'] lands." Reyes, 284 So.2d at 495. At the time Dr. Enzor acquired parcel B from Adams, Adams' access to Antioch Road was by way of old trail road and the service road; travelers making their way from Antioch Road to parcel B never crossed parcel C. Adams' conveyance to Enzor did not "create[] the situation causing the dominant tenement to become landlocked." Quarles, 504 So.2d at 1247.[10] When Adams conveyed to Enzor, parcel C's only access to a public road was by virtue of a common law way of necessity over parcel B and the Rasberrys' land.
Second, the easements Messrs. Hilburn and Hilton subsequently granted to Point Center, Inc. for a road, and to Okaloosa County for utilities, did not bestow anything *795 on Mr. Enzor personally. Whatever rights he may have had as a stockholder of Point Center, Inc. ended with divestiture of the stock; he never had any right as the owner of parcel B. Mr. Enzor has not had a key to the gate since he sold the stock he owned in Point Center, Inc. The road is closed evenings after five o'clock and on week-ends. Testimony that Mr. Enzor could only travel the road with permission of the owners went unrebutted.
There is, moreover, a question as to the validity of the easements, because the instruments purporting to create them were not signed by Mrs. Hilburn or Mrs. Hilton, although they are also owners of the property. See Schmidt v. Matilsky, 490 So.2d 237 (Fla. 1st DCA 1986). Finally, the deed executed by Messrs. Hilburn and Hilton in August of 1991 did not create a public road across parcel C. Like the instruments purporting to grant easements, this deed was not executed by Mrs. Hilburn and Mrs. Hilton. The road has not been accepted by the County and has not been constructed to county standards. The testimony was that it is subject to flooding.
In sum, Rhett E. Enzor, Jr., as the owner of parcel B, has no legal and enforceable right to cross parcel C to reach Garrett Pit Road. The trial court erred in concluding otherwise and in extinguishing Enzor's right to a way of necessity across the plaintiffs' land.
We accordingly reverse and remand for further proceedings consistent with this opinion.
BOOTH and WEBSTER, JJ., concur.

APPENDIX

NOTES
[1] The final judgment finds both a permissive easement and a statutory way of necessity across parcels B and D:

Enzor's statutory way of necessity to this hunting camp in Parcel A by way of the trial road across the Rasberrys ceased to exist upon the termination of the necessity which gave rise to it. Further, the Rasberry's have terminated their permissive use of the trial road by Enzor.
Whether or not Dr. Enzor would have been entitled to a statutory way of necessity under section 704.01(2), Florida Statutes, the evidence does not indicate that he ever paid for one.
[2] The state also condemned Rasberry property, a portion of parcel B, for a borrow pit, less and except a public way through it.
[3] The final judgment succinctly reports these events:

1. Before 1964, Dr. Enzor bought a hunting camp, known as the Old Gordon Place; the camp is located in Section 3 and shown as Parcel A on attached Exhibits 1 and 2. This parcel was landlocked, and Dr. Enzor obtained access to his hunting camp from Antioch Road by going south, southwest across a dirt trail road that passed through Rasberry's property (shown as Parcel D on Exhibit 1) and then Parcel B, also owned at the time by Rasberry. There is no unity of title between the Enzor hunting camp in Section 3 and any of the lands owned by the Rasberrys; therefore, the Enzor's access to Parcel A across the Rasberry property was not by virtue of a common law way of necessity.
2. In 1964 the Rasberrys conveyed a portion of land in the Southern part Section 3 to Dr. Enzor, defendant's Rhett Enzor's father and predecessor in title, but this did not include the hunting camp. (See Exhibit 2)
3. When Interstate 10 was constructed, bisecting the trial road, the state constructed a service road south of and parallel to the Interstate.
[4] The crucial time is the instant that the dominant tenement becomes landlocked. The "common law easement comes into being by implication at the very time the grantor conveys a parcel which is inaccessible except over such grantor's lands." Reyes v. Perez, 284 So.2d 493, 495 (Fla. 4th DCA 1973).
[5] In this connection, the parties stipulated:

6. That in 1979, Defendant, Rhett Enzor, Jr., and the Plaintiff Rasberry agreed Enzor could request the County Commissioners of Okaloosa County to have the service road closed with the understanding that Defendant could continue to use the road for access to his property.
7. On August 21, 1979, Rhett Enzor, Jr. appeared efore the County Commissioners of Okaloosa County to request the closing of the service road and the same was granted... .
8. After the service road was closed and a gate constructed and paid for by the Defendant, he continued to use the road for access to his property.
[6] See Hunter, 549 So.2d at 1095; Parham v. Reddick, 537 So.2d 132 (Fla. 1st DCA 1988).
[7] A recent commentary summarizes the law, as follows:

A common law easement by necessity may be defeated if the claimant has other "reasonable and practicable" access to a public road. This other access, however, must be legal access to a public road; when access is permissive only, it does not act to defeat a claim for a common law easement by necessity.
For example, in Reyes v. Perez, 284 So.2d 493 (Fla. 4th DCA 1973), Perez was awarded a common law way of necessity across adjacent lands owned by Burch even though Perez had temporarily used neighboring land owned by Reyes to get to a public road. The court noted that "the circumstances were not such as to create a legal right of ingress and egress" over the neighboring land. Id. at 494 n. 1. See also Matthews v. Quarles, 504 So.2d 1246, 1247 (Fla. 1st DCA 1986); Noll v. Plosky, 484 So.2d 1345, 1346 (Fla. 4th DCA 1986).
Even when alternative access is obtained, however, an easement of necessity will not end if the alternative access contains an obstacle or other problem that would render that access less than adequate, i.e., not practicable, for the use of the easement holder. Lykes Bros., Inc. v. Clements, 501 So.2d 1302, 1304-05 (Fla. 2d DCA 1986), rev. denied, 508 So.2d 14 (Fla. 1987); F.S. § 704.03 (1993) (defining the term "practicable" as used in 704.01(1)). Furthermore, a potential future means of access to a public road by way of an express easement across lands of another does not defeat a way of necessity. Burdess v. United States, 553 F. Supp. 646, 653 (E.D.Ark. 1982).
Pursuant to § 704.01(1), the burden of proof with regard to the lack of other "reasonable or practicable" access lies with the person seeking the access. See Moran v. Brawner, 519 So.2d 1131, 1133 (Fla. 5th DCA), rev. denied, 528 So.2d 1182 (Fla. 1988). Thus, counsel for a plaintiff seeking judicial recognition of a common law way of necessity should be prepared to present proof of the unavailability of other legal access where it is certain that the defendant will raise the defense.
K.H. & B. Buzzett, Establishing Common Law Easement By Necessity, Fla. B.J., May 1994, at 83-84 (emphasis in original) (footnote omitted).
[8] In 1985, the Rasberrys conveyed a sixty-six-foot wide strip of land adjacent to the eastern boundary of parcel C and part of parcel D to Okaloosa County, "with the express understanding that the lands hereby conveyed will not be accepted for maintenance by the [County] until ... the road is constructed thereon and ... meets county standards." The County never accepted the dedication.
[9] A conveyance implies such an easement only if "an absolute necessity" therefor exists. Tortoise Island Communities, Inc. v. Moorings Ass'n, Inc., 489 So.2d 22 (Fla. 1986).
[10] The Rasberrys' earlier conveyance to Adams' predecessor in title created the situation causing the dominant tenement (parcel "B-C") to become landlocked. Partition of parcel "B-C" into parcels B and C did not relieve the servient tenement of the servitude that sprang into existence when Mr. and Mrs. Rasberry conveyed parcel "B-C."