949 So.2d 347 (2007)
PALM BEACH POLO HOLDINGS, INC., Appellant,
v.
EQUESTRIAN CLUB ESTATES PROPERTY OWNERS ASSOCIATION, INC., a Florida corporation, Appellee.
No. 4D05-3341.
District Court of Appeal of Florida, Fourth District.
February 28, 2007.
*348 Larry A. Zink of Zink, Zink & Zink Co., L.P.A., Hillsboro Beach, for appellant.
Diran V. Seropian of Edna L. Caruso, P.A., West Palm Beach, and Jeffrey D. Feldman and Samuel A. Lewis of Feldman Gale, P.A., Miami, for appellee.
DAMOORGIAN, DORIAN K., Associate Judge.
Palm Beach Polo Holdings, Inc. (hereafter "Holdings") appeals the trial court's Final Judgment in favor of Equestrian Club Estates Property Owners Association, Inc. (hereafter "Association"). Holdings raises three issues on appeal. We affirm as to all, but we write to address only the claim that Holdings is entitled to a common law way of necessity over Equestrian Club Road.
Holdings is the fee simple owner of an undeveloped, unplatted property located in Wellington, Florida and referred to as the "100 Acre Lot." The "100 Acre Lot" is bordered on the northeast by the "Equestrian Club Estates" residential development, on the northwest by the "Stadium Jumping Site," on the east and west by unrelated parties, and on the south by the unbuilt extension of Lake Worth Road. Palm Beach Polo, Inc., (hereafter "Polo") owns the Stadium Jumping Site, but Polo leases the Stadium Jumping Site to an entity called Stadium Jumping, Inc. North of Equestrian Club Estates and the Stadium Jumping Site is Pierson Road, a public roadway running east and west. Holdings sought access to the "100 Acre Lot" from Pierson Road via Equestrian Club Road, the Association's private roadway that runs south from Pierson Road through Equestrian Club Estates.
In evaluating Holdings' way of necessity claim, it is necessary to examine how the relevant properties became titled as they are today. In 1993, Tri-State Group, Inc. (hereafter "Tri-State"), a corporation owned by Glenn Straub, participated in a bankruptcy auction and was the winning bidder of the "100 Acre Lot" and the Stadium Jumping Site. However, Tri-State did not take title to either the "100 Acre Lot" or the Stadium Jumping Site. Instead, Mr. Straub sought and obtained permission from the Resolution Trust Corporation to assign the purchase and sale *349 agreement from Tri-State to two newly formed Florida corporations, dividing the properties between the two companies. Mr. Straub then formed Holdings and Polo to effectuate this purpose. Holdings took title to the "100 Acre Lot," while Polo took title to the Stadium Jumping Site. In light of this history, the trial court found that Mr. Straub created the situation in which the "100 Acre Lot" was allegedly landlocked. The trial court noted that absent this assignment, Tri-State would have owned both properties and the "100 Acre Lot" would not have been landlocked.
The issue before this court is whether the "100 Acre Lot" is inaccessible except over Equestrian Club Road and therefore a common law way of necessity exists to the benefit of Holdings over Equestrian Club Road. However, in analyzing this issue, we must defer to the factual findings of the trial court that are supported by competent, substantial evidence. This is because a judgment from the trial court comes to an appellate court clothed with a presumption of correctness. Peacock v. Carver, 315 So.2d 214 (Fla. 1st DCA 1975). Moreover, this presumption of correctness is even stronger when reviewing a judgment based upon the factual findings of the trial court. See Clegg v. Chipola Aviation, Inc., 458 So.2d 1186, 1187 (Fla. 1st DCA 1984) ("The resolution of factual conflicts by a trial judge in a nonjury case will not be set aside on review unless totally unsupported by competent and substantial evidence.").
Section 704.01(1), Florida Statutes, codifies the common-law rule with respect to the implied grant of a way of necessity:
[A]n implied grant exists where a person has heretofore granted or hereinafter grants lands to which there is no accessible right-of-way except over her or his land, or has heretofore retained or hereinafter retains land which is inaccessible except over the land which the person conveys. In such instances a right-of-way is presumed to have been granted or reserved. Such an implied grant or easement in lands or estates exists where there is no other reasonable and practicable way of egress or ingress and same is reasonably necessary for the beneficial use or enjoyment of the part granted or reserved. An implied grant arises only where a unity of title exists from a common source other than the original grant from the state or United States. . . .
"A common law way of necessity is an implied reservation or grant that arises when a single grantor conveys part of a parcel of land resulting in either the part conveyed or the part retained being cut off from access to a public road." Blanton v. City of Pinellas Park, 887 So.2d 1224, 1230 (Fla.2004). A common law way of necessity is grounded on the presumption that whenever a party conveys property he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. Roy v. Euro-Holland Vastgoed, B.V., 404 So.2d 410, 412 (Fla. 4th DCA 1981). As the First District has explained, "the deed of the grantor as much creates the way of necessity as it does the way by grant, the only difference between the two being that one is granted in express words and the other only by implication." Stein v. Darby, 126 So.2d 313, 318 (Fla. 1st DCA 1961).
A claimant seeking to establish a way of necessity, whether by implied grant or statutory way, has the burden of proof to establish that he or she has no practicable route of ingress or egress. See Moran v. Brawner, 519 So.2d 1131, 1133 (Fla. 5th DCA 1988). The Florida Supreme Court has held that the test for an implied grant *350 of way of necessity is "absolute necessity," not just reasonable necessity. See Tortoise Island Cmtys., Inc. v. Moorings Ass'n, Inc., 489 So.2d 22 (Fla.1986); see also Keene v. Jackson, 732 So.2d 1138, 1139 (Fla. 1st DCA 1999) ("A way of necessity requires a showing of absolute necessity, rather than mere convenience."). In order to establish a way of necessity, the owner must prove: 1) both properties must have been owned by the same party; 2) the common owner or source of title must have created the situation causing the property to become landlocked; and 3) at the time the common owner or common source of title created the situation or the property became landlocked, the property retained by the grantor must have had access to a public road. Roy, 404 So.2d at 412.
In the Final Judgment, the trial court found that while access over Equestrian Club Road may be more "convenient," it is not an absolute necessity in that Holdings has been able to access the "100 Acre Lot" over the Stadium Jumping Site. The trial court further found that but for Mr. Straub's intentional act of transferring the properties to two separately controlled corporations, the current "necessity" claim would not exist. These findings are supported by competent, substantial evidence. Moreover, we agree with the trial court that it would be manifestly unfair to allow Holdings to obtain a way of necessity based upon the actions of Mr. Straub in creating the non-unity of title by the voluntary decision not to take title in his wholly-owned corporation, Tri-State.
Affirmed.
GUNTHER and FARMER, JJ., concur.