POLEN, J.
Appellant, PGA North II of Florida, LLC (“PGA North”), appeals the trial court’s final judgment, entered in favor of appellee, Department of Transportation (“DOT”), ordering that DOT need not compensate PGA North for the tract of land at issue in this appeal. We disagree with the trial court and reverse for entry of judgment for PGA North and hold that it is entitled to compensation for the period of time during which it had no ingress or egress to or from its tract. On remand, the trial court should determine the amount of compensation to which PGA North is entitled.
PGA North “is the successor in interest of Royal American Industries, Inc., as to the real property,” an 86.34 acre tract, which is the subject of the appealed final judgment, evidenced by a special warranty deed and affidavit of conversion. In January of 1982, a final judgment was entered by the trial court, ordering DOT to compensate Royal American Industries, Inc. (“Royal American”) for property taken and damages to the remainder of the property. The final judgment ordered compensation to Royal American for the taking of a portion of its property to build a southbound ramp from PGA Boulevard to Interstate 95 (“1-95”). This taking “substantially reduced the availablé access from Royal American’s remainder property consisting of approximately 90 acres (the parent tract), onto PGA Boulevard.” The final judgment allocated $669,603.00 as compensation for property taken and $450,097.00 as compensation for severance damages to the remainder, totaling $1,119,700.00. Additionally, the final judgment ordered that, upon receiving a building permit by the City of Palm Beach Gardens to construct on the parent tract, DOT was to issue a permit to Royal American for the construction of access drive *1152 ways from the parent tract to PGA Boulevard. If DOT determined it should revoke or modify the permits, the final judgment held that DOT must compensate Royal American based on the possible damage to the remainder property.
In 1999, PGA North began negotiations to purchase the parent tract; however, it was unable to secure the entire ninety-acre parcel because DOT had begun discussions with then parent tract owner, the MacArthur Foundation (“MacArthur”), to acquire 3.6 acres of the parcel for a flyover project. PGA North, represented by Catalfumo Construction Development (“Catalfumo”), entered into a contract with MacArthur and took title of 86.34 acres of land by conveyance of a special warranty deed[1] in March. Catalfumo’s CEO testified that at the time PGA North acquired the property, it was landlocked, but because it took the land subject to the 1982 final judgment, PGA North would get access to the road or receive compensation for its inability to gain such access. Before PGA North acquired the property from MacArthur, DOT attempted to acquire the same for its flyover project. PGA North acquired 86.34 acres of the land, while the remaining 3.6 acres were retained by MacArthur. DOT then acquired the remaining 3.6 acres of the parcel of land, which abutted PGA Boulevard. PGA North sought enforcement of the 1982 final judgment to receive compensation in lieu of access points, as it became obvious that access points would never be constructed.
This matter was tried before the court, non-jury, on March 8, 9 and 10, 2010. In its final judgment, dated April 2010, the trial court found a fundamental problem with PGA North’s claim, and that was a failure by PGA North to ever acquire title to the 3.6 acre portion of the parent tract which would have allowed access to PGA Boulevard. The court further found that the unity of title which existed when the 1982 final judgment was entered was severed during the March 1999 conveyance and that PGA North had no access to PGA Boulevard, except over the 3.6 acre abutting land retained by MacArthur at the time of the conveyance to PGA North. Additionally, the court held that PGA North improperly asserted that DOT prevented it access to PGA Boulevard when, in fact, it was MacArthur’s actions which gave rise to a claim, not DOT’S. Lastly, the trial court determined that an implied easement was not created at the time of conveyance. This appeal followed.
“[Wjhere a trial court’s conclusions following a non-jury trial are based upon legal error, the standard of review is de novo.” Acoustic Innovations, Inc. v. Schafer, 976 So.2d 1139, 1143 (Fla. 4th DCA 2008). We apply this standard of review because this case involves the legal effect of documents, creating questions of law.
PGA North contended that it had a right to traverse the 3.6 acre parcel of land as the party to whom the parent tract was conveyed, subject to the 1982 final judgment. “Covenants are loosely defined as ‘promises in conveyances or other instruments pertaining to real estate.’ ” Palm Beach Cnty. v. Cove Club Investors Ltd., 734 So.2d 379, 382 n. 4 (Fla.1999). Covenants are divided into two categories: real and personal covenants. Id. A real covenant “concerns the property conveyed *1153 and the occupation and enjoyment thereof.” Id. “If the performance of the covenant must touch and involve the land or some right or easement annexed and appurtenant thereto, and tends necessarily to enhance the value of the property or renders it more convenient and beneficial to the owner, it is a covenant running with the land.” Id. A personal “covenant is collateral or is not immediately concerned with the property granted.” Id.
Here, the trial court found that a covenant did not exist, but instead, a conditional promise to grant access and, upon a breach, compensate PGA North monetarily. An expert real estate attorney testified that the 1982 final judgment did not create a covenant running with the land because it did not have any language which created an easement or covenant; it provided for damages in the event access was not granted, rather than specific performance; the judgment provided a conditional right of access; and there are third parties who have control over the access. The attorney did not find any language in the final judgment or deed that granted an express easement and there was no actual use to create an implied easement.
In order to establish a covenant that runs with the land, the following must be shown: the covenant touches and concerns the land; intent; and notice. Winn-Dixie, Stores, Inc. v. Dolgencorp, Inc., 964 So.2d 261, 265 (Fla. 4th DCA 2007). Here, the land in question is approximately ninety acres. There is a developable 86.34 acre parcel which was conveyed to PGA North and a 3.6 acre parcel which abuts PGA Boulevard and is now owned by DOT. PGA North contended that the covenant touches and concerns the land because it enhances the value of PGA North’s property while burdening the servient 3.6 acre parcel. PGA North further contended that intent was shown by the language of the 1999 special warranty deed. The special warranty deed provided that the land was conveyed by MacArthur to PGA North:
TOGETHER with (a) all the tenements, hereditaments and appurtenances thereto belonging in anyway appertaining to the Land, (b) all easements, rights, interests, claims, reversions and appurtenances belonging to or in any way appertaining to the Land and (c) all right, title and interest of grantor in and to all real property lying within streets, alleys and other public ways (before or after vacation thereof) contiguous to the Land, but only to the center line of said streets, alleys and other public ways.
DOT asserted that the 1999 special warranty deed expressly excepted the terms of the 1982 final judgment — the document which created a covenant running with the land. DOT thereby argued that, if a covenant running with the land existed pursuant to the 1982 judgment, it was extinguished by the special warranty deed. We disagree with DOT’S assertions because an exception in a deed is not equivalent to excepting out. Where a special warranty deed conveys all tenements, her-editaments and appurtenances appertaining to the land, the intent is for all rights and access points to and from the land to be included. The language in the special warranty deed conveyed in 1999 expressly conveyed all rights to the land, thus the requisite intent, notice, and touching and concerning of the land was present to prove the existence of a covenant running with the land.
Ingress and egress
An implied easement by necessity is granted when land is granted “to which there is no accessible right-of-way except over [the] land.” Matthews v. Quarles, 504 So.2d 1246, 1247 (Fla. 1st DCA 1986). For entitlement to cross the *1154 servient land, the following must be present:
(1) both properties must at one time have been owned by the same party, (2) the common source of title must have created the situation causing the dominant tenement to become landlocked, and (3) at the time the common source of title created the problem the servient tenement must have had access to a public road.
Id. Additionally, section 704.01(1), Florida Statutes, provides:
The common-law rule of an implied grant of a way of necessity is hereby recognized, specifically adopted, and clarified. Such an implied grant exists where a person has heretofore granted or hereafter grants lands to which there is no accessible right-of-way except over her or his land, or has heretofore retained or hereafter retains land which is inaccessible except over the land which the person conveys. In such instances a right-of-way is presumed to have been granted or reserved. Such an implied grant or easement in lands or estates exists where there is no other reasonable and practicable[2] way of egress, or ingress and same is reasonably necessary for the beneficial use or enjoyment of the part granted or reserved.
§ 704.01(1), Fla. Stat. (2011). Moreover, this court cited to the Supreme Court of Florida and held that not only is reasonable necessity required, but absolute necessity is required. Palm Beach Polo Holdings, Inc. v. Equestrian Club Estates Prop. Owners Ass’n, 949 So.2d 347, 349-50 (Fla. 4th DCA 2007) (citing Tortoise Island Communities, Inc. v. Moorings Ass’n, 489 So.2d 22 (Fla.1986)).
PGA North argued that the 86.34 acre quadrant of land, located in the northwest corner, was landlocked. DOT asserted that there was a pre-existing comprehensive plan for the City of Palm Beach Gardens to build a connection through the land to Military Trail, eliminating a reasonable, and especially an absolute, need for an easement. The First District Court of Appeal has held that the time that is most crucial “is the instant that the dominant tenement becomes landlocked.” Enzor v. Rasberry, 648 So.2d 788, 792 n. 4 (Fla. 1st DCA 1994). Additionally, Florida’s long-standing rule is that an easement by implication passes by conveyance to all subsequent grantees. Id. The right to the easement expires upon the acquisition of another reasonable or practicable means of ingress and egress. Id. However, “a potential future means of access to a public road by way of an express easement across lands of another does not defeat a way of necessity.” Id. at 792 n. 7.
When PGA North acquired the 86.34 parcel of land, the 3.6 acres that MacArthur retained for “business purposes” abutted the main road, PGA Boulevard. Daniel Catalfumo, of Catalfumo Construction Development, testified that a developer on the 86.34 parcel of land has a monumentally significant need' of access to PGA Boulevard. In order to have obtained access to the parcel of land owned by PGA North, one had to: “get off 1-95, go around the loop road, go back under a bridge, go around the corner, make four different turns to get there.” At the time the 86.34 acre parcel of land was purchased, there was access to the north through a residential neighborhood. However, PGA North never used it because it could not use the access point on a permanent basis for its intended commercial purpose. DOT suggested that PGA North *1155 could have built a bridge to gain access to PGA Boulevard; however, section 704.01, Florida Statutes, provides that “no other reasonable and practicable way of egress, or ingress and same is reasonably necessary for the beneficial use or enjoyment of the part granted or reserved” while section 704.03 defines “practicable” as “ “without the use of bridge.’” §§ 704.01, 704.03, Fla. Stat. (2011).
We therefore hold that PGA North had no reasonable means of access to PGA Boulevard for a period of time and was landlocked until it later obtained the right to access under the 3.6 acre flyover project. Because the 1982 final judgment ordered compensation in lieu of access and DOT did not issue permits to allow PGA North access, we hold that the trial court erred in not awarding compensation to PGA North for that period during which it was landlocked. Accordingly, we reverse the trial court’s order and remand this cause so the court below can conduct further proceedings in order to assess the compensation to which PGA North is entitled.

Reversed and Remanded.

Conner, J., and Gillespie, Kenneth L., Associate Judge, concur.

. A special warranty deed has the effect of conveying the entire title and estate of the grantor, if that is what the grantor so intended. See Harris v. Sklarew, 166 So.2d 164, 166 (Fla. 3d DCA 1964). A special warranty differs from a general warranty deed only in that a general warranty deed warrants against claims of all persons, whereas a special warranty is limited to claims involving the grant- or. Id.

. Section 704.03, Florida Statutes, provides that practicable means " ‘without the.use of bridge, ferry, turnpike road, embankment, or substantial fill.’” § 704.03, Fla. Stat. (2011).